DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Mercedes-Benz USA, LLC, appeals from the judgment of the Summit County Court of Common Pleas granting Appellee's motion for summary judgment. This Court reverses.
 I. {¶ 2} On March 3, 2003, Appellee, Thomas Ulrich, filed his complaint against Appellant alleging a violation of Ohio's Lemon Law and raising breach of implied and express warranty claims under the Magnuson-Moss Warranty Act. Appellee's claims stem from his purchase of a 2002 Mercedes-Benz CL55 AMG Coupe in January 2002. At the time of the purchase, Appellee paid nearly $10,000 above the sticker price of the car because it was in high demand and supply was limited. As such, after taxes Appellant paid approximately $127,000 for the vehicle.
 {¶ 3} With approximately 4,000 miles on the vehicle, Appellee began to notice problems with the car. Included among these alleged defects were problems with the car's distronic cruise control, interior lights, built-in telephone, battery, fuse box cover, blower motor, windshield rain sensor, and CD player. According to Appellee's account, he experienced these problems on a repeated basis and brought the car in to be repaired well over the six times represented by repair receipts.
 {¶ 4} Following the filing of Appellee's complaint and discovery, both parties moved for summary judgment. The trial court denied Appellant's motion for summary judgment on all counts of Appellee's complaint. In turn, the trial court granted Appellee's motion for summary judgment on his lemon law claim. Subsequently, Appellee dismissed his remaining claims. Thereafter, the trial court requested that the parties brief the issue of attorneys' fees and the court held a hearing to determine the appropriate amount of fees. Following that hearing, the trial court awarded Appellee nearly $55,000 in fees and costs. Appellant timely appealed, raising two assignments of error for our review. Appellee in turn cross-appealed, raising two cross-assignments of error for our review.
 II. Assignment of Error I
"The trial court erred in granting summary judgment to appellee on his ohio lemon law claim and in denying [appellant's] motion for summary judgment on that same claim."
 {¶ 5} In its first assignment of error, Appellant argues that the trial court erred in its finding that no genuine issue of material fact existed and that Appellee's car was by law a lemon. Specifically, Appellant avers that Appellee failed to prove that any nonconformity existed in the car and that Appellee failed to present uncontradicted evidence that meets any of the presumptions of recovery under Ohio's Lemon Law. This Court agrees.
 {¶ 6} This Court reviews an award of summary judgment de novo. Graftonv. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12, certiorari denied (1986), 479 U.S. 948,107 S.Ct. 433, 93 L.Ed.2d 383.
 {¶ 7} Pursuant to Civil Rule 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 8} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v. Henkle (1991),75 Ohio App.3d 732, 735.
 {¶ 9} R.C. 1345.72 provides in pertinent part as follows:
"(A) If a new motor vehicle does not conform to any applicable express warranty and the consumer reports the nonconformity to the manufacturer, its agent, or its authorized dealer during the period of one year following the date of original delivery or during the first eighteen thousand miles of operation, whichever is earlier, the manufacturer, its agent, or its authorized dealer shall make any repairs as are necessary to conform the vehicle to such express warranty, notwithstanding the fact that the repairs are made after the expiration of the appropriate time period.
"(B) If the manufacturer, its agent, or its authorized dealer is unable to conform the motor vehicle to any applicable express warranty by repairing or correcting any nonconformity after a reasonable number of repair attempts, the manufacturer, at the consumer's option and subject to division (D) of this section, either shall replace the motor vehicle with a new motor vehicle acceptable to the consumer or shall accept return of the vehicle from the consumer and refund each of the following:
"(1) The full purchase price;
"(2) All incidental damages, including, but not limited to, any fees charged by the lender or lessor for making or canceling the loan or lease, and any expenses incurred by the consumer as a result of the nonconformity, such as charges for towing, vehicle rental, meals, and lodging."
Additionally, R.C. 1345.71(E) defines nonconformity as "any defect or condition that substantially impairs the use, value, or safety of a motor vehicle to the consumer and does not conform to the express warranty of the manufacturer or distributor."
 {¶ 10} In his motion for summary judgment, Appellee relied upon R.C.1345.73 to demonstrate that he had endured a reasonable number of repair attempts by Appellant. R.C. 1345.73 provides that:
"It shall be presumed that a reasonable number of attempts have been undertaken by the manufacturer, its dealer, or its authorized agent to conform a motor vehicle to any applicable express warranty if, during the period of one year following the date of original delivery or during the first eighteen thousand miles of operation, whichever is earlier, any of the following apply:
"(A) Substantially the same nonconformity has been subject to repair three or more times and either continues to exist or recurs;
"(B) The vehicle is out of service by reason of repair for a cumulative total of thirty or more calendar days;
"(C) There have been eight or more attempts to repair any nonconformity;
"(D) There has been at least one attempt to repair a nonconformity that results in a condition that is likely to cause death or serious bodily injury if the vehicle is driven, and the nonconformity either continues to exist or recurs."
Further, the Ohio Supreme Court has held that section (B) of this statute, if met, provides a presumption of recovery. Royster v. ToyotaMotor Sales, U.S.A., Inc. (2001), 92 Ohio St.3d 327, syllabus.
 {¶ 11} In support of his contentions that his vehicle's defects met the definition of nonconformity under the statute, Appellee averred in his affidavit as follows:
"9. The defects in the car have substantially affected the safety of the car to me. The malfunctioning windshield wipers were a particular safety hazard. On several occasions, I was driving on the highway and the wipers suddenly came on, even though there was no rain, mist, or any reason whatsoever for the wipers to engage. The sudden movement of the wipers for no reason at all was very startling and dangerous. On other occasions, despite heavy rain the wipers would not come on as they were supposed to. This made it difficult to see through the windshield and created a safety hazard. Another safety hazard was that the vehicle left me stranded when the battery died, and on another occasion the electronic key malfunctioned and would not permit me to enter the vehicle. Being stranded without a vehicle or without a way to get into the vehicle created a safety concern to me.
"10. The defects in the car have substantially affected the use of the car to me. The car was unuseable while it was in the shop being repaired for nearly two whole months during my first year of ownership and additional time after the first year. In addition, the repeated and numerous defects have caused me to lose faith and confidence in the car, and because of this I could not use the car as I would have if it had not been defective. For example, the distronic cruise control feature, an option for which Mercedes charged nearly $3,000, has malfunctioned repeatedly and I have not consistently had cruise control or the distronic features available on the vehicle. The problem has never been fixed, despite three unsuccessful repair attempts in the first year and two further attempts thereafter. I purchased this vehicle at a premium because I believed Mercedes that I was buying one of the finest, most reliable, and most well-built cars on the market. Instead, I paid top dollar for a car that has continually malfunctioned.
"11. The defects in this car have greatly reduced the value of the car to me. I would never purchase a car with this number of defects because it is unreliable and also very frustrating to own. A major reason I decided on a new vehicle was reliability. That aspect of value of my purchase has been denied to me because of all the frustration and tremendous inconvenience that this car has been to me. With so many repeated electronic malfunctions, I feel that this car is worth substantially less than it would be if it did not suffer these repeated problems."
Appellee believes that these statements coupled with his repair receipts indicated that he has clearly demonstrated he was entitled to a presumption of recovery under 1345.73(A), (B), and (C).
 {¶ 12} We begin by noting that asserting any of the presumptions under 1345.73 "does not obviate the requirement that the claimant prove a non-conformity which substantially impairs the use, safety, or value of the vehicle pursuant to R.C. 1345.72(B)." Kademenos v. Mercedes-Benz,N.A. (Mar. 3, 1999), 5th Dist. No. 98 CA 50. This Court agrees with our sister district and we decline to adopt Appellee's assertion that a nonconformity need not contribute to the thirty-day period under 1345.72(B).
 {¶ 13} By the plain language of Appellee's affidavit, he has established that multiple nonconformities existed in his vehicle. However,
"[w]hen a litigant's affidavit in support of his or her motion for summary judgment is inconsistent with his or her earlier deposition testimony, summary judgment in that party's favor is improper because there exists a question of credibility which can be resolved only by the trier of fact." Turner v. Turner (1993), 67 Ohio St.3d 337, paragraph one of the syllabus.
As such, we now turn to Appellee's deposition, which Appellant has argued contains statements which are, in some material respects, inconsistent with his affidavit.
Safety
 {¶ 14} In his affidavit, Appellee noted three defects in his vehicle which, from his perspective, created safety hazards. These defects included malfunctioning windshield wipers, a malfunctioning electronic key card, and a dead battery.
 {¶ 15} In his deposition, Appellee was asked whether any of the conditions that were subject to a particular repair order created an unsafe condition. In that respect, the following colloquy took place.
Appellee: "You know, if there was one it would be the rain sensor wipers."
Appellant's Counsel: "The rain sensor?"
Appellee: "Yeah. If you relied on them it could. * * *"
Appellant's Counsel: "If you relied on them?"
Appellee: "If you relied on them, yes, I would tell you that could be very unsafe."
Appellant's Counsel: "But you did not rely on them?"
Appellee: "I knew not to."
Additionally, Appellant noted the wipers worked as designed in their manual mode. That is, when the sensors did not automatically turn the wipers on, Appellee simply turned them on in the manner that most drivers are accustomed to. As such, by his deposition testimony, Appellee indicated that from his subjective perspective, because he was familiar with the malfunction, the wipers did not create a safety hazard to him. Appellee also noted in his affidavit that the wipers coming on unexpectedly when it was not raining created a dangerous condition. However, when questioned at his deposition, Appellee did not raise any
safety concern with the windshield wipers:
Appellant's Counsel: "Okay. So none of those other problems posed a safety issue in your mind?"
Appellee: "No."
As such, Appellee cannot rely upon the assertion in his affidavit of a safety concern with the windshield wipers because such an assertion is inconsistent with his deposition testimony.
 {¶ 16} Next, we turn our attention to the dead battery in Appellee's vehicle. At his deposition, the following took place:
Appellant's Counsel: "[W]ere you concerned about safety as well?"
Appellee: "No, because I wasn't driving it."
Appellant's Counsel: "Okay."
Appellee: "You know, I would have been if I would have been somewhere at night and the car didn't run and you know."
Appellant's Counsel: "Okay."
Appellee: "So, yeah at that point — so there was a concern. I'm not worried about safety as such, just as a concern of being stranded." Therefore, Appellee's affidavit again conflicted with his deposition testimony.
 {¶ 17} Finally, Appellee asserted in his affidavit that his malfunctioning key card created a safety hazard. In his deposition, Appellee indicated that a safety hazard could arise if he were far from home and his car would not start. However, as with the alleged battery defect, Appellee's assertion is that he could become stranded. Even this assertion was rebutted in his deposition when he indicated that he could always carry an actual key with him to start the vehicle, and that other than one malfunction, he had never had a problem with starting the vehicle with the replacement key card.
Use
 {¶ 18} With respect to the use of the vehicle, Appellee averred that his use of the vehicle was substantially impaired by the alleged defect in his cruise control system. However, when responding to questions which included the defect in his cruise control system, the following took place:
Appellant's Counsel: "So you were able to keep driving the car throughout this period?
Appellee: "Absolutely."
* * *
Appellant's Counsel: "You could continue driving it?"
Appellee: "Sure."
Appellant's Counsel: "Did you feel — did you drive it for the same purposes that you always do, the ones we discussed?"
Appellee: "Yeah, that had not changed."
Appellant's Counsel: "That had never changed?"
Appellee: "That's correct."
As such, Appellee has offered conflicting statements as to whether the use of his vehicle was impaired in any fashion by the alleged defect in his distronic cruise control system.
Value
 {¶ 19} Finally, in his affidavit Appellee averred that the alleged defects in his Mercedes have substantially impaired the value of the car. However, once again Appellee's answers in his deposition are inconsistent with his affidavit. With respect to the repairs to his cruise control system, Appellant was asked whether he felt the car had declined in value as a result of this repair. He responded, "No, I wouldn't think." When questioned regarding the dead battery repair to his car, the following took place:
Appellee: "So the question again is?"
Appellant's Counsel: "Is do you feel that because this happened to the car that it decreased in value even though once it was fixed just simply the fact of having to have this repaired decreased the car's value?"
Appellee: "No."
Later on in his deposition, Appellee was equivocal as to whether the value of his car had been effected by the alleged defects, noting as follows:
Appellee: "I would tell you that at this point I started to believe that this isn't the car I thought I was getting and that, you know, if I was to buy this car and look at this — these orders, which I would do if I was buying, that I would say, you know, wait a minute, do I want car that's had these issues."
Appellant's Counsel: "Okay."
Appellee: "But I'm no expert in telling you what the value would be, but I can certainly tell you my opinion is if I was the buyer of this vehicle, at this point I would have a different look at it.
As such, Appellant's affidavit and deposition are at least, in part, conflicting.
 {¶ 20} As noted above, the moving party carries a heavy burden in order to be entitled to summary judgment. At trial, Appellee would have had an opportunity to convince the trier of fact of his position by a preponderance of the evidence. Viewing the evidence above in a light most favorable to Appellant, however, a genuine issue of material fact still exists. The trial court had before it conflicting statements by Appellee as to whether, under the definition provided by R.C. 1345.71, Appellee's vehicle has a nonconformity. Accordingly, summary judgment in favor of Appellee was improper.
 {¶ 21} Appellant has also urged that summary judgment should have been awarded in its favor. "Generally, a nonmoving party cannot defeat a motion for summary judgment by submitting an affidavit which, without good explanation, contradicts that party's previous deposition testimony." Steiner v. Steiner (July 12, 1995), 4th Dist. No. 93CA2191. However, Appellant has not expounded upon this assertion in a meaningful fashion. That is, Appellant has detailed at length the reasons Appellee is not entitled to summary judgment. However, Appellant has provided little analysis as to why it is entitled to summary judgment. As such, "[i]f an argument exists that can support this [assertion], it is not this court's duty to root it out." Cardone v. Cardone (May 6, 1998), 9th Dist. Nos. 18349, 18673.
 {¶ 22} Additionally, while Appellee's affidavit conflicts with his deposition in several key aspects, that does not automatically warrant summary judgment in Appellant's favor. Rather, with respect to Appellant's motion for summary judgment, we must view the evidence in a light most favorable to Appellee. In so doing, a question of fact does remain as to whether the cumulative effect of the alleged defects reach the threshold of a noncomformity. For example, the parties contest the impact of the dead battery on Appellee's claim. Appellee asserts that the battery died and his car was out of service for twenty days as a result of the repair. Appellant asserts that the battery had no defects once it was jumped, so any replacement of the battery was purely a goodwill gesture. Further, while Appellee stated on several occasions in his deposition that the value of the car had not decreased, his expert indicated that the car had lost nearly $20,000 in value. Finally, Appellee asserts that the total number of repairs to his car far exceed the number of receipts he received for the repairs. On the other hand, Appellant asserts that these receipts accurately reflect the number of repair attempts to Appellee's car. As such, Appellant's contention that it was entitled to summary judgment lacks merit.
 {¶ 23} Accordingly, Appellant's first assignment of error is sustained, inasmuch as the trial court erred in granting summary judgment.
 ASSIGNMENT OF ERROR II
"The trial court abused its discretion in awarding appellee $54,763.92 in attorneys' fees and costs."
 CROSS-ASSIGNMENT OF ERROR I
"The trial court abused its discretion in failing to calculate [appellee's] attorney[s'] fees using the lodestar method and by failing to provide any basis for [appellee's] fee award."
 CROSS-ASSIGNMENT OF ERROR II
"The trial court abused its discretion in reducing [appellee's] requested attorney[s'] fees by more than forty percent."
 {¶ 24} As Appellant's second assignment of error and Appellee's cross-assignments of error are related, they will be addressed together. Based upon this Court's resolution of Appellant's first assignment of error, the trial court's award of attorneys' fee is necessarily reversed as well.
 III. {¶ 25} Appellant's assignments of error are sustained, and the judgment of the Summit County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Exceptions.
Slaby, P.J., Whitmore, J., concur