**ULRICH, Appellee,**

**v.**

**MERCEDES–BENZ USA, L.L.C., Appellant.**

[Cite as *Ulrich v. Mercedes–Benz USA, L.L.C.*, 187 Ohio App.3d 154, 2010-Ohio-348.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 24740.

Decided Feb. 3, 2010.

Mitchel E. Luxenburg and Laura K. McDowall, for appellee.

Richard Gurbst and Jennifer J. Meadows, for appellant.

WHITMORE, Judge.

{¶ 1} Defendant-appellant, Mercedes–Benz USA, L.L.C., appeals from the judgment of the Summit County Court of Common Pleas in favor of plaintiff-appellee, Thomas Ulrich. This court affirms.

I

{¶ 2} This case has suffered from a lengthy procedural history. This court summarized this case's pre–2005 history in Mercedes–Benz's 2007 appeal as follows:

Appellee, Thomas Ulrich, filed a complaint against [Mercedes–Benz] regarding a Mercedes–Benz automobile, alleging two counts of breach of warranty under the Magnuson–Moss Warranty Act, and one count alleging a violation of Ohio's lemon law pursuant to R.C. 1345.72. [Mercedes–Benz] answered, generally denying the allegations. [Mercedes–Benz] filed a motion for summary judgment, and [Ulrich] filed a motion for partial summary judgment, solely on the lemon law claim. The trial court granted [Ulrich]'s motion for partial summary judgment, finding the vehicle to be a lemon as a matter of law, and entered judgment in favor of [Ulrich] in the amount of $155,675.53.[1] The trial court further scheduled the remaining two breach of warranty claims for trial. [Ulrich], however, dismissed the remaining two counts without prejudice.

[Mercedes–Benz] appealed from the trial court's judgment, and [Ulrich] filed a cross-appeal. This Court reversed and remanded the matter to the trial court for further proceedings. Ulrich v. Mercedes–Benz USA, LLC [("Ulrich I")], 9th Dist. No. 22224, 2005-Ohio-1461, 2005 WL 711903. Upon remand, the matter was assigned to the magistrate.

The parties agreed to allow the matter to go to a jury trial with the magistrate presiding. At the conclusion of trial, the jury entered a verdict in

---

1. The trial court also awarded Ulrich attorney fees in the amount of $54,763.92.

favor of [Ulrich], awarding damages in the amount of $160,000.00. On October 28, 2005, the trial court issued a "Judgment Entry on Jury's Verdict," which was signed by both the magistrate and the trial court judge. The judgment entry contains no language as required by Civ.R. 53(E)(2), "indicat[ing] conspicuously that a party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party timely and specifically objects to that finding or conclusion as required by Civ.R. 53(E)(3)." The record further indicates that the magistrate did not file a magistrate's decision regarding the jury's verdict.

In its judgment entry, the trial court stated that judgment on [Ulrich]'s request for attorney fees would be entered after a hearing on that issue.

[Mercedes–Benz] filed a notice of appeal from the trial court's judgment. This Court dismissed the appeal by journal entry for lack of a final, appealable order. *Ulrich v. Mercedes–Benz USA, LLC* (Jan. 4, 2006), 9th Dist. No. 22970.

[Upon remand,] [t]he magistrate held a hearing on the issue of attorney fees. On June 29, 2006, the magistrate issued a decision in which he awarded attorney fees to [Ulrich] in the amount of $230,370.09. [Mercedes–Benz] filed objections to this decision of the magistrate. [Mercedes–Benz] also filed a motion for a new trial. On August 8, 2006, the magistrate issued a decision, denying the motion for new trial. On August 9, 2006, the magistrate issued a nunc pro tunc order, in which the magistrate ordered that the caption of the August 8, 2006 entry be corrected to read: " 'ORDER' and not MAGISTRATE'S DECISION."

On August 28, 2006, the magistrate issued a decision on the jury verdict, in which he recommended that the trial court enter judgment in favor of [Ulrich] in the amount of $160,000.00. This decision did not contain any language as required by newly-effective Civ.R. 53(D)(3)(a)(iii), "indicat[ing] conspicuously that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, * * * unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b)."

On September 6, 2006, [Mercedes–Benz] filed a notice of appeal. On October 20, 2006, this Court dismissed the appeal by journal entry for lack of jurisdiction. *Ulrich v. Mercedes–Benz USA, LL[C]* (Oct. 20, 2006), 9th Dist. No. 23401.

On December 1, 2006, the trial court issued a judgment order, ruling on [Mercedes–Benz]'s objections to the magistrate's decision regarding the award of attorney fees to [Ulrich]. The trial court overruled [Mercedes–Benz's] objections, noted that [Mercedes–Benz] had not objected to the judgment awarding compensatory damages to [Ulrich], and entered judgment in favor of

[Ulrich] in the amount of $160,000.00 for compensatory damages and $230,370.09 for attorney fees.

(Footnote omitted.) *Ulrich v. Mercedes–Benz USA, L.L.C.* [("*Ulrich II*")], 9th Dist. No. 23550, 2007-Ohio-5034, 2007 WL 2781200, at ¶ 2–10.

{¶ 3} On September 26, 2007, this court reversed Ulrich's judgment for $160,000 in compensatory damages and $230,370.09 in attorney fees and remanded the matter because the magistrate and trial court did not prepare their decisions in accordance with Civ.R. 53 and allow Mercedes–Benz time to file objections to the magistrate's decision. Id. at ¶ 16. Upon remand, the magistrate issued a decision recommending that the trial court award Ulrich $160,000 in compensatory damages, $230,370.09 in attorney fees, and costs. On December 26, 2007, Mercedes–Benz filed objections to the magistrate's decision. The trial court adopted the magistrate's decision, and Mercedes–Benz appealed. This court dismissed the appeal for lack of a final, appealable order. *Ulrich v. Mercedes–Benz USA, L.L.C.* (Jan. 6, 2009), 9th Dist. No. 24548.

{¶ 4} After this court's dismissal, the trial court entered judgment independently of the magistrate, again awarding Ulrich $160,000 in damages, $230,370.09 in attorney fees, and costs. On March 13, 2009, Mercedes–Benz filed a motion for a new trial. The court denied the motion on April 1, 2009. Mercedes–Benz now appeals from the trial court's judgment and raises four assignments of error for our review.

## II

## Assignment of Error Number One

The trial court erred in denying [Mercedes–Benz's] motion for directed verdict and in entering the jury's verdict in appellee's favor, because appellee presented no objective evidence that his vehicle contained any defect constituting a nonconformity as required by O.R.C. §§ 1345.71 and 1345.72.

{¶ 5} In its first assignment of error, Mercedes–Benz argues that the trial court erred by denying its motion for directed verdict. Specifically, Mercedes–Benz argues that Ulrich failed to set forth objective evidence of a nonconformity that caused substantial impairment to his vehicle and that Mercedes–Benz was unwilling or unable to fix. We disagree.

{¶ 6} Generally, this court reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion. *Fields v. Cloyd*, 9th Dist. No. 24150, 2008-Ohio-5232, 2008 WL 4493144, at ¶ 9. "In so doing, we consider the trial court's action with reference to the nature of the underlying matter."

*Tabatabai v. Tabatabai,* 9th Dist. No. 08CA0049–M, 2009-Ohio-3139, 2009 WL 1844353, at ¶ 18. Civ.R. 50(A)(4) provides as follows:

When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

"A motion for a directed verdict assesses the sufficiency of the evidence, not the weight of the evidence or the credibility of the witnesses." *Kane v. O'Day,* 9th Dist. No. 23225, 2007-Ohio-702, 2007 WL 518376, at ¶ 18. The motion "does not present factual issues, but a question of law, even though in deciding such a motion, it is necessary to review and consider the evidence." *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.,* 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, ¶ 4, quoting *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 58 O.O.2d 424, 280 N.E.2d 896, paragraph three of the syllabus. "Accordingly, we review [a] * * * ruling on a motion for a directed verdict de novo." *Northeast Ohio Elite Gymnastics Training Ctr., Inc. v. Osborne,* 9th Dist. No. 07CA0117–M, 183 Ohio App.3d 104, 2009-Ohio-2612, 916 N.E.2d 484, at ¶ 6.

■ {¶ 7} R.C. 1345.72 contains Ohio's lemon law and provides as follows:

(A) If a new motor vehicle does not conform to any applicable express warranty and the consumer reports the nonconformity to the manufacturer, its agent, or its authorized dealer during the period of one year following the date of original delivery or during the first eighteen thousand miles of operation, whichever is earlier, the manufacturer, its agent, or its authorized dealer shall make any repairs as are necessary to conform the vehicle to such express warranty, notwithstanding the fact that the repairs are made after the expiration of the appropriate time period.

(B) If the manufacturer, its agent, or its authorized dealer is unable to conform the motor vehicle to any applicable express warranty by repairing or correcting any nonconformity after a reasonable number of repair attempts, the manufacturer, at the consumer's option * * *, either shall replace the motor vehicle with a new motor vehicle acceptable to the consumer or shall accept return of the vehicle from the consumer and refund each of the following:

(1) The full purchase price;

(2) All incidental damages, including, but not limited to, any fees charged by the lender or lessor for making or canceling the loan or lease, and any expenses incurred by the consumer as a result of the nonconformity, such as charges for towing, vehicle rental, meals, and lodging.

R.C. 1345.73 further elaborates upon the phrase "reasonable number of repair attempts" by creating a presumption in favor of the consumer in certain instances. Specifically, that statute provides:

It shall be presumed that a reasonable number of attempts have been undertaken by the manufacturer, its dealer, or its authorized agent to conform a motor vehicle to any applicable express warranty if, during the period of one year following the date of original delivery or during the first eighteen thousand miles of operation, whichever is earlier, any of the following apply:

(A) Substantially the same nonconformity has been subject to repair three or more times and either continues to exist or recurs;

(B) The vehicle is out of service by reason of repair for a cumulative total of thirty or more calendar days;

(C) There have been eight or more attempts to repair any nonconformity;

(D) There has been at least one attempt to repair a nonconformity that results in a condition that is likely to cause death or serious bodily injury if the vehicle is driven, and the nonconformity either continues to exist or recurs.

R.C. 1345.73. "A nonconforming motor vehicle is one that, from the consumer's perspective, suffers from any defect or condition which substantially impairs its use, value, or safety and does not conform to the express warranty of the manufacturer or distributor." *Gray v. Chrysler Corp.* (Apr. 11, 2001), 9th Dist. No. 20204, 2001 WL 358389, at *2. See also R.C. 1345.71(E) (" 'Nonconformity' means any defect or condition that substantially impairs the use, value, or safety of a motor vehicle to the consumer and does not conform to the express warranty of the manufacturer or distributor").

{¶ 8} Ulrich testified that he purchased his Mercedes–Benz CL55 for $120,086.75 in January 2002. Ulrich stored the car for the winter and began to drive it once the weather conditions became more favorable. Ulrich testified that he first began experiencing problems with the car on June 17, 2002, when dashboard indicator lights illuminated for the car's cruise-control system, electronic stability program, braking system, and tire-pressure sensor. The indicators directed Ulrich to take the car to a dealership. Ulrich immediately took the car to the dealership but turned it off when he arrived. Upon inspection, the dealership failed to find any problems with the car or any stored codes in the car's control unit that might indicate an electronic signal out of normal operating range. The dealership informed Ulrich that if he experienced problems again, he would have to bring the car in and leave it running for the dealership to conduct its tests. Approximately two weeks later, Ulrich again experienced problems with the car's cruise-control system and indicator lights. Ulrich testified that the car repeatedly took itself out of cruise-control mode and indicated that the cruise control was inoperable. Ulrich turned the car off several times and restarted it,

at which point the cruise-control system would work for a short time before failing once again. Ulrich could not take the car to the dealership when the problem occurred, however, because the dealership was closed.

{¶ 9} On August 8, 2002, Ulrich's cruise-control system malfunctioned during the dealership's normal business hours, so he took his car there. The dealership diagnosed a problem with one of the car's electronic switches and ordered a replacement part. Ulrich testified that he dropped the car off and picked it up on the same day, August 30, 2002, after the dealership received and installed the replacement part. That night, the start of Labor Day weekend, Ulrich used the car to go to dinner. After dinner, Ulrich was able to open the car's door with the car's keyless system, but none of the car's lights were operational and the car would not start. According to Ulrich, he did not leave any lights on in the car or otherwise forget to do anything that might drain the battery during the time that he finished dinner. Ulrich phoned Mercedes Roadside Assistance. Because Ulrich did not have a regular key for the car with him, Roadside Assistance took him home and brought him back to his car the next day with the key. Ulrich and Roadside Assistance were able to jump-start the car, and Ulrich drove it to the dealership. Ulrich left the car at the dealership and waited until Tuesday, the day after Labor Day, to inform the dealership what had happened. Ulrich testified that Jeff Huckabone, the service manager for the dealership, told him that the vehicle had stored several low-voltage codes and that he wanted to replace the battery to be safe. The battery was on back order, however, so Ulrich left his car at the dealership. Approximately two weeks later, Ulrich called the dealership, and Huckabone informed him that the battery still had not arrived. Huckabone offered to put "a regular acid battery" in the car and indicated that "it should be okay." Ulrich indicated that he was uncomfortable with Huckabone's assertion that it "should be" okay and told Huckabone that he wanted to wait for the back-ordered battery. Ulrich was not able to pick up the car with the new battery installed until September 19, 2002.

{¶ 10} The dealership tested Ulrich's car again on November 13, 2002 for a "diagnosis assistance system output short," and on November 18, 2002, Ulrich took the car to the dealership for a variety of problems, including tire cupping, rain-sensor malfunctioning, and a loose fuse-box cover. The dealership kept Ulrich's vehicle until November 27, 2002, while conducting tests that uncovered numerous fault codes in the overhead control panel. Ulrich picked up the car but returned it to the dealership on December 2, 2002, after having rain-sensor malfunctions. Once again, the dealership attributed the malfunctions to a control-panel problem. The dealership replaced the control panel, and Ulrich picked up the car on December 3, 2002. Ulrich testified that he took the car to the dealership again on December 9, 2002, however, after he could not start it

with the keyless system. This time, Ulrich left his car at the dealership until December 24, 2002. Ulrich testified that when he dropped the car off Huckabone told him that the keyless system would have to be tested and some parts would need to be ordered. Huckabone did not specify what tests had to be performed, what parts needed to be ordered, or that Ulrich could continue to use the car while waiting for the parts. Rather, Ulrich called the dealership himself on December 24, 2002, and asked about the status of the car. At that point, Huckabone told Ulrich that he could pick up the car and bring it back when a new keyless card arrived.

{¶ 11} Ulrich testified that his car lost a great deal of personal value to him because of its continuous problems and that he had no faith that the car would be reliable upon the expiration of its warranty. Ulrich further testified that in his opinion, the resale value of the car had decreased dramatically because, as a consumer, he would be unwilling to purchase a used high-end vehicle with such an extensive repair history. Finally, Ulrich testified that after 2003 he continued to have problems with the car displaying fault codes and malfunctioning when he used the cruise-control and rain-sensor features.

{¶ 12} John Pejnovic, a technician and parts manager at a Bosch authorized service center, testified that he inspected and tested Ulrich's car during Ulrich's first year of ownership. Pejnovic testified that he had 13 years of experience working with Mercedes vehicles and that Ulrich asked him to confirm certain problems that he had experienced with his car. Pejnovic testified that he verified several electrical problems with the car. Specifically, Pejnovic found that the autostart feature in Ulrich's car failed, the wipers started on their own even when the car was turned off, and the car started on its own after Pejnovic shut it off and began stepping out of it. Pejnovic testified that in his experience, the problems Ulrich had with the car were not "normal problems" for a Mercedes–Benz.

{¶ 13} Ira Zahner testified that he was the market manager for Mercedes–Benz during the time that Ulrich brought his car to the dealership for repairs. According to Zahner, he personally approved the replacement of Ulrich's rain sensors, tires, battery, and overhead control panel, but did so as an act of goodwill rather than out of necessity. Ulrich denied ever speaking to Zahner about these issues. Likewise, Huckabone testified that he was the one who spoke with Ulrich. Nevertheless, Zahner insisted that he had spoken with Ulrich. When Ulrich had problems with his car's battery, Zahner told him that the battery did not need to be replaced and that even if Ulrich did insist upon a replacement, a lead-acid battery would operate as well as the gel-mat battery that came with the car. Zahner claimed that Ulrich refused to accept anything other than a gel-mat battery. Similarly, Zahner testified that Ulrich's complaints led

him to replace the tires on Ulrich's car as an act of goodwill even though they were expensive, suffered only from normal wear and tear, and were not covered under warranty for normal wear and tear. Zahner admitted, however, that the foregoing items were not designated as goodwill replacements on Ulrich's repair orders. Zahner claimed that he did not mark the items as goodwill replacements because he did not want them to count against his goodwill budget for the year. Warren Scott Engle, a service manager for a different Mercedes–Benz dealership, testified that in his experience the fact that replacement parts were installed on a car indicates that there was a problem with it.

{¶ 14} Mercedes–Benz argues that the court erred by not granting its motion for a directed verdict because Ulrich failed to present any objective evidence that his vehicle suffered from one or more nonconformities. Yet R.C. 1345.71(E) provides that the term " '[n]onconformity' means any defect or condition that substantially impairs the use, value, or safety of a motor vehicle *to the consumer* and does not conform to the express warranty of the manufacturer or distributor." (Emphasis added.) This court has previously recognized that it is not inappropriate to consider subjective evidence when determining whether nonconformities exist. *Gray*, 9th Dist. No. 20204, 2001 WL 358389, at *2 ("A nonconforming motor vehicle is one that, *from the consumer's perspective,* suffers from any defect or condition which substantially impairs its use, value, or safety and does not conform to the express warranty of the manufacturer or distributor" [emphasis added] ); see also *Ulrich I*, 2005-Ohio-1461, 2005 WL 711903, at ¶ 11– 13 (concluding that Ulrich's affidavit, in which he asserted that defects in the car "substantially affected the use of the car to [him]" and "greatly reduced the value of the car to [him]," "established that multiple nonconformities existed in his vehicle"). Moreover, as outlined above and below, Ulrich did present objective evidence that his car suffered from nonconformities. Accordingly, Mercedes–Benz's first argument lacks merit.

{¶ 15} Next, Mercedes–Benz argues that it was entitled to a directed verdict because all of Ulrich's concerns involved "fit and finish" items that could not constitute nonconformities. Ulrich testified that apart from the issues that routinely caused him to take his car to the dealership, he also experienced other problems with the car that he simply noted and intended to bring to the dealership's attention at a later date. For instance, Ulrich experienced problems with the car's cellular phone system. Ulrich specified these other problems were "minor fit and finish type issues" that he did not believe warranted the immediate attention of the dealership. Accordingly, while Ulrich admitted that some of the problems he had with the car were fit-and-finish items, those were not the items with which he was primarily concerned. Ulrich testified, and the repair orders from Mercedes–Benz confirmed, that he repeatedly experienced problems with

the car's sensors and cruse-control system. Ulrich also experienced problems with the car's battery dying (the reason for which Mercedes–Benz was never able to explain) and the tires cupping, which a technical specialist for Mercedes–Benz described as a result of unbalanced tires. Additionally, Pejnovic personally experienced electrical problems with Ulrich's car, such as the car starting on its own. Construing the evidence most strongly in favor of Ulrich, we cannot say that reasonable minds could only conclude that all of the problems with Ulrich's car were fit-and-finish items that did not substantially impair the use or value of the car. Compare *Gen. Motors Acceptance Corp. v. Hollanshead* (1995), 105 Ohio App.3d 17, 23, 663 N.E.2d 663 (concluding that claimant did not show that problems amounted to nonconformities when they involved only items such as the moldings, windows, bumpers, and headlights, and the claimant herself described the problems as fit-and-finish problems). Mercedes–Benz's second argument lacks merit.

{¶ 16} Finally, Mercedes–Benz argues that it was entitled to directed verdict because Ulrich failed to prove that "any alleged problem with the vehicle remained unresolved after a reasonable number of repair attempts." The Ohio Supreme Court has recognized that whether a vehicle ultimately gets repaired is irrelevant under the lemon law. *Royster v. Toyota Motor Sales, U.S.A., Inc.* (2001), 92 Ohio St.3d 327, 330–331, 750 N.E.2d 531. R.C. 1345.73(B) creates a presumption that a reasonable number of repair attempts have been performed if the vehicle has been out of service by reason of repair for a cumulative total of 30 or more calendar days. See also id. at 331, 750 N.E.2d 531 ("The *unavailability* of the new car is the key element. The fact that a consumer cannot drive a newly purchased vehicle for a full month in the first year of ownership defines the vehicle as a lemon" [emphasis sic] ). The parties stipulated at trial that Ulrich's vehicle was out of service for at least 55 calendar days during Ulrich's first year of ownership. The only issue was whether the car was out of service "by reason of repair." Once again, the repair orders from Mercedes–Benz indicate that the dealership replaced multiple parts on Ulrich's vehicle, and there was testimony that dealerships do not replace parts absent a problem. The fact that Ulrich might have been able to pick up his car sooner while waiting for certain repairs is irrelevant because, according to Ulrich, the dealership did not tell him that he could do so. See id. at 328, 750 N.E.2d 531 (standing for the proposition that a vehicle is considered to be in a state of repair while it is in the possession of a dealership pending the arrival of a replacement part). While there was conflicting evidence presented at trial as to whether the repairs made to Ulrich's car were necessary or acts of goodwill, Warren Scott Engle testified that in his experience as a service manager for Mercedes–Benz, his dealership would not install replacement parts on a car unless there was a problem with the car.

{¶ 17} A directed verdict is appropriate only if reasonable minds could come to but one conclusion. Civ.R. 50(A)(4). Furthermore, when considering a directed verdict, the evidence must be viewed in a light most favorable to the nonmoving party. Id. Viewing the evidence in a light most favorable to Ulrich, we cannot conclude that the magistrate and trial court erred by denying Mercedes–Benz's motion for a directed verdict. Mercedes–Benz's first assignment of error is overruled.

### Assignment of Error Number Two

The trial court abused its discretion when it permitted appellee to add a common-law breach of warranty claim to his complaint at the time of trial, where he had made no such claim in his original complaint or any amended complaint, and he had failed to reinstate two previously-dismissed statutory breach of warranty claims despite numerous inquires from [Mercedes–Benz].

{¶ 18} In its second assignment of error, Mercedes–Benz argues that the trial court abused its discretion by allowing Ulrich to add a breach-of-warranty claim at trial. We disagree.

{¶ 19} Civ.R. 15 governs the amendment of pleadings. Civ.R. 15(A) allows a party to amend his pleading "as a matter of course" before a designated time period and by leave of court or written consent of his adversary after the designated time period. "Civ.R. 15(B) treats issues that were not raised in the pleadings as if they were so raised, as long as they were tried with the express or implied consent of the parties and substantial prejudice will not arise as a result." *McCartney v. Universal Elec. Power Corp.*, 9th Dist. No. 21643, 2004-Ohio-959, 2004 WL 384167, at ¶ 7. " '[A] motion for leave to amend should be granted absent a finding of bad faith, undue delay or undue prejudice * * *.' " *Radio Parts Co. v. Invacare Corp.*, 178 Ohio App.3d 198, 2008-Ohio-4777, 897 N.E.2d 228, at ¶ 11, quoting *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 6, 12 OBR 1, 465 N.E.2d 377. "An appellate court applies an abuse-of-discretion standard of review to a trial court's decision to grant a party leave to amend a pleading." *Radio Parts Co.*, at ¶ 9. See also *Tabatabai*, 2009-Ohio-3139, 2009 WL 1844353, at ¶ 18 (providing that reviewing court must consider the nature of the underlying matter when reviewing a trial court's action on a magistrate's decision). "Abuse of discretion" connotes more than simply an error in judgment; the court must act in an unreasonable, arbitrary, or unconscionable manner. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶ 20} Ulrich's original complaint contained three counts: two pertaining to the Magnusson–Moss Warranty Act and a third entitled "Ohio Motor Vehicles with Warranty Nonconformities Act Manufacturer." Ulrich proceeded to trial solely on the third count. Ulrich's third count provided as follows:

36. [Ulrich] re-alleges and incorporates by reference as though fully set forth herein, all paragraphs of this Complaint set forth above.

37. Pursuant to O.R.C. § 1345.72, Manufacturer has been unable to conform the CL55 to the written warranties issued to [Ulrich] by Manufacturer after a reasonable number of repair attempts to said vehicle.

38. Pursuant to O.R.C. § 1345.72(B), [Ulrich] is entitled to a refund of the full purchase price of the vehicle, including all collateral charges and finance charges, and/or a replacement vehicle, plus all attorney fees and costs.

Immediately before jury selection, the magistrate reviewed the claims pending before the court with both parties. Ulrich's counsel indicated that Ulrich's third count essentially contained both a lemon-law claim and a claim for contractual breach of warranty. The following discussion took place on the record:

THE COURT: * * * As I understand, the first two counts in [Ulrich]'s complaint have been withdrawn insofar as the Magnusson–Moss Act goes, and we're here addressing the circumstances of a third count, which is the so-called Lemon Law. Is that correct, from [Ulrich]?

[ULRICH'S COUNSEL]: The Lemon Law and the contractual breach of warranty.

THE COURT: That's all rolled into one?

[ULRICH'S COUNSEL]: All rolled into Count Three.

THE COURT: Is that [Mercedes–Benz's] understanding of the matters?

[MERCEDES–BENZ]: Yes, Your Honor. It's [Ulrich's] complaint.

Accordingly, Mercedes–Benz's counsel agreed that the third count in Ulrich's complaint contained both a lemon-law claim and a common-law breach-of-warranty claim.

{¶ 21} On appeal, Mercedes–Benz argues that the court abused its discretion by allowing Ulrich to proceed on a breach-of-warranty claim. Despite the aforementioned concession from its counsel that Ulrich's complaint contained a claim for breach-of-warranty, Mercedes–Benz argues that it repeatedly objected to the inclusion of Ulrich's breach-of-warranty claim at trial. Yet Mercedes–Benz did not raise any argument with regard to Ulrich's breach-of-warranty claim until midway through trial when the parties and the magistrate were reviewing proposed jury instructions. At that time, Mercedes–Benz's counsel argued that Ulrich's complaint did not contain a breach-of-warranty claim. The court reviewed the record and, noting Mercedes–Benz's concession at the beginning of trial, ruled that Ulrich could maintain a warranty claim. The court did, however, make two adjustments. First, the court limited Ulrich to a claim for breach of express warranty despite Ulrich's attempt to argue breach of both express and

implied warranty. Second, the court allowed Mercedes–Benz to amend its answer in order to add the affirmative defense of failure to mitigate.

{¶ 22} Based on our review of the record, we cannot conclude that the court abused its discretion by allowing Ulrich to go forward on a claim for breach of an express warranty. Both parties indicated at the beginning of trial that they understood Ulrich's complaint to contain a common-law claim for breach of warranty even though it was not set forth in a separate count. Mercedes–Benz waited until virtually the conclusion of Ulrich's case in chief before it argued that the court should disallow a claim for breach of warranty. By that time, Ulrich had already presented the vast majority of the evidence pertaining to the warranty claim. Further, in allowing Ulrich to proceed on a warranty claim, the court sought to accommodate both parties as much as possible. The court limited Ulrich's warranty claim and allowed Mercedes–Benz to add an affirmative defense. Therefore, it does not appear that Mercedes–Benz was unduly prejudiced by the court's decision. *Radio Parts Co.*, 178 Ohio App.3d 198, 2008-Ohio-4777, 897 N.E.2d 228, at ¶ 11.

{¶ 23} Next, Mercedes–Benz argues that the trial court "committed reversible error by substituting one breach of warranty claim for another." Although we agree with Mercedes–Benz that the trial court misstated the nature of Ulrich's warranty claim, we do not agree that the misstatement amounts to reversible error. It is clear from the record that Ulrich asserted a common-law breach-of-express-warranty claim at trial after dismissing his original claims for breach of warranty under the federal Magnusson–Moss Warranty Act. In adopting the magistrate's decision, however, the trial court erroneously referred to Ulrich's warranty claim as one arising from the Magnusson–Moss Warranty Act. Even so, the court's misstatement had no effect upon its substantive reasons for adopting the magistrate's decision to allow the amendment to the pleadings. The court agreed with the magistrate for the following reasons:

> Here, the Breach of Warranty claim accrued as part and parcel of the Lemon Law claim. First, prior to trial, the parties stipulated that the vehicle was covered by an express warranty. Second, [Mercedes–Benz] was well aware of the Breach of [W]arranty claim/allegations early in this case and the parties did conduct discovery on the issue. Finally, [Mercedes–Benz] was permitted to present the affirmative defense of failure to mitigate in response to the added Breach of Warranty claim.

The court's reasoning would apply to either a Magnusson–Moss Warranty Act claim or a common-law warranty claim with equal force. Accordingly, there is no evidence that Mercedes–Benz was prejudiced by the court's erroneous reference to the source of Ulrich's warranty claim. Id.

{¶ 24} Mercedes–Benz's brief also contains two additional arguments: (1) that the court should have issued a cautionary instruction to the jury that evidence relating to Ulrich's warranty claim could not be considered as part of his lemon-law claim and (2) that Ulrich "presented no evidence to support the essential elements of any type of breach of warranty claim." (Emphasis omitted.) Apart from the fact that Mercedes–Benz's remaining arguments are underdeveloped, neither fits within the scope of Mercedes–Benz's captioned assignment of error. Accordingly, we decline to address them. See *State v. Ashby*, 9th Dist. No. 06CA0077–M, 2007-Ohio-3118, 2007 WL 1805029, at ¶ 6 (refusing to address underdeveloped arguments that were not separately assigned as error). Mercedes–Benz's second assignment of error is overruled.

### Assignment of Error Number Three

The trial court erred when it denied [Mercedes–Benz's] motion for a new trial.

{¶ 25} In its third assignment of error, Mercedes–Benz argues that the trial court abused its discretion by denying Mercedes–Benz's motion for a new trial. Specifically, Mercedes–Benz argues that the court should have granted it a new trial on the bases that (1) Ulrich's "continued extensive use" of his car after judgment is new evidence that the car is not useless to him and (2) Mercedes–Benz was prejudiced by the addition of Ulrich's breach-of-warranty claim, which allowed him to present evidence of defects and repairs that occurred beyond the one-year period designated for lemon-law claims. We disagree.

{¶ 26} Civ.R. 59(A) permits a party to seek a new trial on nine different grounds as well as "for good cause shown." Civ.R. 59(A). "Depending upon the basis of the motion for a new trial, this Court will review a trial court's decision to grant or deny the motion under either a de novo or an abuse of discretion standard of review." *Calame v. Treece*, 9th Dist. No. 07CA0073, 2008-Ohio-4997, 2008 WL 4404538, at ¶ 13, citing *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 262 N.E.2d 685, paragraphs one and two of the syllabus (indicating that a de novo standard of review applies when the basis for a new trial motion rests solely upon a question of law, while an abuse-of-discretion standard applies to motions based upon a matter requiring the court's discretion).

{¶ 27} Mercedes–Benz's argument is structured so as to present an alleged error followed by a list of rule numbers from Civ.R. 59. For instance, Mercedes–Benz's brief states:

Mr. Ulrich's continued extensive use of the car shows that his earlier claims and arguments to the jury were misleading as to the existence, nature, seriousness, and effect of the problems with the car, and as to what he would do with it should the jury find in his favor. These misleading claims and

arguments improperly influenced the jury. As such, the trial court should have granted [Mercedes–Benz] a new trial pursuant to Rule 59(A)(2), (4), (5), (6), (7), (8), and (9).

Mercedes–Benz makes no attempt to explain why or how Civ.R. 59(A)'s particular components apply to any of its arguments. Moreover, Mercedes–Benz fails to cite any law in support of its proposition that a car's continued operability irrefutably demonstrates that the car is not defective. This court will not parse Civ.R. 59(A)'s components and separately apply Mercedes–Benz's arguments to each one when Mercedes–Benz has not done so. See App.R. 16(A)(7). Nor will this court root out law in support of those arguments on its behalf. *Cardone v. Cardone* (May 6, 1998), 9th Dist. No. 18349, 1998 WL 224934, at *8. Consequently, we find no merit in Mercedes–Benz's assertion that the court should have awarded it a new trial.

{¶ 28} We also find no merit in Mercedes–Benz's assertion that the court was required to hold an evidentiary hearing on Mercedes–Benz's motion before denying it. Civ.R. 59 requires a hearing only if a court entertains a motion for a new trial "for a reason not stated in [a] party's motion." Civ.R. 59(D). Because the court did not do so, it was not required to hold a hearing before denying the motion. Id. Accord *Corbin v. Dailey*, 10th Dist. No. 08AP–802, 2009-Ohio-881, 2009 WL 491739, at ¶ 13. Mercedes–Benz's third assignment of error is overruled.

### Assignment of Error Number Four

The trial court abused its discretion in awarding appellee $230,370.09 in attorneys' fees and costs.

{¶ 29} In its fourth assignment of error, Mercedes–Benz argues that the trial court awarded unreasonable attorney fees and costs to Ulrich. We disagree.

{¶ 30} An aggrieved consumer is entitled to an award of reasonable attorney fees and costs once he prevails on a lemon-law claim. R.C. 1345.75(A). Further, reasonable attorney fees may be awarded under the lemon law for fees incurred on appeal. *Royster*, 92 Ohio St.3d at 332, 750 N.E.2d 531. The amount of attorney fees to be awarded on a lemon-law claim is a matter within the discretion of the trial court. *Gray*, 9th Dist. No. 20204, 2001 WL 358389, at *4. "Abuse of discretion" connotes more than simply an error in judgment; the court must act in an unreasonable, arbitrary, or unconscionable manner. *Blakemore*, 5 Ohio St.3d at 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 31} Mercedes–Benz hinges the majority of its argument upon the fact that Ulrich was originally awarded $54,763.92 in attorney fees in 2004. A different judge presided over this case in 2004 and determined that $54,763.92 was an

appropriate amount of attorney fees to award because he believed some of the requested fees were duplicative. On appeal, however, that award was overturned, and the matter was remanded for further proceedings. *Ulrich I,* 2005-Ohio-1461, 2005 WL 711903, at ¶ 24. A different judge presided over the case upon remand due to the retirement of the former judge. The second judge held a hearing on the issue of attorney fees and decided that $230,370.09 was an appropriate amount to award. According to Mercedes–Benz, this amounted to an abuse of discretion because the second judge should have adhered to the first judge's decision that some of the requested fees were duplicative. Mercedes–Benz fails to point to any law in support of its argument that the first judge's reasoning was binding upon the second judge once this court reversed the first judge's decision. See App.R. 16(A)(7). As previously noted, the amount of attorney fees to be awarded is a matter of discretion for the trial judge. *Gray,* 9th Dist. No. 20204, 2001 WL 358389, at *4. The fact that the second trial judge arrived at a different result than the first trial judge does not automatically compel the conclusion that there was an abuse of discretion.

{¶ 32} Mercedes–Benz also argues that the attorney-fee award amounted to an abuse of discretion because "attorneys' fees were awarded for the preparation of the motion for summary judgment and appellate briefs for arguments that this Court rejected and reversed." While it is true that attorney fees should not be awarded for work that relates to an unsuccessful claim, that has no bearing on a prevailing claim, see, e.g., *Helfrich v. Mellon,* 5th Dist. No. 06–CA–69, 2007-Ohio-3358, 2007 WL 1881537, at ¶ 72–73, Ulrich ultimately prevailed on all of his claims. One's status as a prevailing party "does not depend upon the degree of success at different stages of the suit, but on whether, *at the end of the suit,* * * * the party who had made a claim against the other, has successfully maintained it." (Emphasis added.) *Moga v. Crawford,* 9th Dist. No. 23965, 2008-Ohio-2155, 2008 WL 1961216, at ¶ 6. Because Ulrich prevailed on all of his claims at the end of this suit, the trial court did not abuse its discretion by awarding him fees as the prevailing party. Mercedes–Benz's fourth assignment of error lacks merit.

## III

{¶ 33} Mercedes–Benz's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

CARR, P.J., and BELFANCE, J., concur.