[Cite as *Fagen v. Jaguar Land Rover N. Am., L.L.C.*, 2023-Ohio-4324.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| DEBORAH FAGEN, | : | APPEAL NOS. | C-220640 |
| | | | C-220656 |
| Plaintiff-Appellant/Cross-Appellee, | : | TRIAL NO. | A-2001080 |
| vs. | : | | |
| JAGUAR LAND ROVER NORTH AMERICA, LLC, | : | *O P I N I O N.* | |
| Defendant-Appellee/Cross-Appellant. | : | | |

Civil Appeals From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded in C-220656; Appeal Dismissed in C-220640

Date of Judgment Entry on Appeal: December 1, 2023

*Derek W. Gustafson*, for Plaintiff-Appellant/Cross-Appellee,

*Kehoe & Associates, LLC, Kevin P. Shannon* and *Robert D. Kehoe,* for Defendant-Appellee/Cross-Appellant.

**Bock, Judge.**

{¶1} This appeal involves plaintiff-appellant/cross-appellee Deborah Fagen's leased 2020 Jaguar F-type. After several failed attempts by defendant-appellee/cross-appellant Jaguar Land Rover North America, LLC, ("Jaguar") to fix a recurring issue with the vehicle's indicator lights caused by a software issue, Fagen sued, alleging that the vehicle is a lemon under R.C. 1345.72. The trial court agreed, granted her summary-judgment motion, and awarded her damages. Fagen appealed the trial court's damages award in a single assignment of error. Jaguar filed a cross-appeal, asserting that the trial court improperly denied its summary-judgment motion and granted Fagen's summary-judgment motion.

{¶2} We sustain Jaguar's first assignment of error, in part, and hold that a genuine issue of material fact exists as to whether the vehicle's problems substantially impaired its use, safety, or value to Fagen. But we affirm the portion of its decision involving the existence of a defect or condition and the statutory presumption of reasonable repairs under R.C. 1345.73(A)(2). Because we reverse the trial court's decision granting Fagen summary judgment, her appeal challenging the trial court's award of damages is moot. We remand the case for further proceedings.

## I. Facts and Procedure

{¶3} In August 2019, Fagen signed a three-year lease with Jaguar Land Rover of Cincinnati ("the dealership") for a new Jaguar F-type. Within weeks, she began experiencing a series of issues with the dashboard indicator lights. Fagen contacted the dealership for service. Service invoices show that from September 2019 to April 2020, the dealership serviced the vehicle five times.

{¶4} In September 2019, Fagen asked the dealership to address flashing dashboard lights involving the vehicle's washer fluid and brake system, as well as a dashboard warning that "special functions are not available." While the dealership's technician was unable to duplicate the condition, a scan revealed diagnostic trouble codes and a low voltage event. The mechanic charged the battery, cleared the faults, and test drove the vehicle before returning it to Fagen.

{¶5} From October 30 to November 6, 2019, Fagen left the vehicle at the dealership to address an error message: "DISPLAYING BRAKE FAULT, PARK ASSIST INOP ETC." The technician ran several tests and found that the vehicle "would present faults randomly." The technician replaced the vehicle's "dynamic control switch (dynamic/snow mode)." Following a test drive, no faults returned and the dealership released the vehicle to Fagen.

{¶6} On November 18, 2019, Fagen brought the vehicle back to the dealership because "STABILITY, BRAKE, DRIVE WITH CAUTION MESSAGES ARE BACK ON." Following a series of diagnostic tests, the technician replaced the dynamic range switch, reprogrammed the "ATCM," and test drove the vehicle with no issues before returning it to Fagen.

{¶7} Fagen returned the vehicle to the dealership from January 28, 2020, to February 6, 2020, because "BRAKE FAULT, PARK ASSIST IN-OP, STABILITY FAULT, DRIVE WITH CAUTION MESSAGE COMES ON WHILE DRIVING." The technician found multiple communication errors and connection issues and replaced the "connector shell," cleared the faults, and retested the vehicle. Because it was "performing as designed," the vehicle was released to Fagen.

{¶8} Finally, from March 9, 2020, to April 22, 2020, Fagen again reported that "THE BRAKE FAULT, PARK ASSIST IN-OP, STABILITY FAULT, DRIVE WITH CAUTION MESSAGE COMES ON WHILE DRIVING." The technician could not replicate the warnings and performed a litany of diagnostic tests. Eventually, the technician contacted an overseas engineering department, which reinstalled the vehicle's software before releasing the vehicle to Fagen.

{¶9} Fagen sued Jaguar, seeking damages for violations of Ohio's Lemon Law, the Magnusson Moss Act, and the vehicle's warranty. The parties moved for summary judgment. In support of her motion, Fagen attached an affidavit, the lease, repair invoices, videos of the dashboard, and copies of the owner manual. Fagen also relied on deposition testimony of Pat Rooney, the dealership's service department foreman. For its part, Jaguar relied on the repair invoices and the express warranty.

{¶10} The trial court granted Fagen's summary-judgment motion on her Lemon Law claim under R.C. 1345.01 et seq. and denied Jaguar's summary-judgment motion. Jaguar appealed and Fagen cross-appealed. We dismissed those appeals for lack of a final, appealable order, because "the trial court did not determine the specific amount of damages Ms. Fagen would be entitled to should she elect a refund." Months later, the trial court issued a supplemental order granting Fagen's summary-judgment motion and awarding Fagen $30,406.61 in damages. Days later, Fagen filed a "motion for final judgment," arguing that "an award of costs, attorney's fees, and statutory damages need not be included." As that motion was pending, Fagen appealed the supplemental order. The following week, Jaguar filed its cross-appeal.

## II. Law and Analysis

{¶11} In a single assignment of error, Fagen challenges the trial court's calculation of damages. In its cross-appeal, Jaguar argues in two assignments of error that the trial court should have denied Fagen's motion, or alternatively, it should have granted Jaguar's motion for summary judgment. Specifically, Jaguar disputes the existence of a nonconformity as defined by R.C. 1345.71(E), argues that Fagen failed to present expert testimony, and maintains that the repair time in this case did not trigger the statutory presumption of recovery under Ohio's Lemon Law. We discuss Jaguar's cross-appeal first.

{¶12} We review the trial court's grant of summary judgment de novo. *Parker v. L.T.,* 1st Dist. Hamilton No. C-160642, 2017-Ohio-7674, ¶ 13, citing *Doe v. Shaffer*, 90 Ohio St.3d 388, 390, 738 N.E.2d 1243 (2000). Summary judgment should be granted when "there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and the evidence demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion." *Id.*, citing *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Material facts are "those facts 'that might affect the outcome of the suit under the governing law.' " *Iams v. DaimlerChrysler, Corp.,* 174 Ohio App.3d 537, 2007-Ohio-6709, 883 N.E.2d 466, ¶ 10 (3d Dist.), quoting *Turner v. Turner*, 67 Ohio St.3d 337, 340, 617 N.E.2d 1123 (1993).

### Ohio's Lemon Law

{¶13} The Ohio legislature enacted Ohio's Lemon Law as "a powerful tool for consumers," requiring "new vehicles to live up to warranties given by manufacturers," attaching a "clear duty to sellers," and "provid[ing] a clear remedy to buyers should the seller breach its duty." *Royster v. Toyota Motor Sales, U.S.A.,* 92 Ohio St.3d 327,

328, 750 N.E.2d 531 (2001). As a consumer-protection law, Ohio's Lemon Law is remedial and "should be liberally construed in favor of the consumer to effectuate [its] purpose." *Collins v. Mullinax E., Inc.,* 153 Ohio App.3d 534, 2003-Ohio-3497, 795 N.E.2d 68, ¶ 11 (11th Dist.). "The law is designed for self-help without protracted litigation." *Id.*

{¶14} Under the law, if a new vehicle fails to conform to the express warranty, the manufacturer, its agent, or an authorized dealer must repair the vehicle to conform to the warranty. R.C. 1345.72(A). But when the vehicle's nonconformity cannot be made right "after a reasonable number of repair attempts," the consumer "may request a refund or replacement." *Royster* at 329, quoting R.C. 1345.72(B)(1)-(2). The law defines a nonconformity as "any defect or condition that substantially impairs the use, value, or safety of a motor vehicle to the consumer and does not conform to the express warranty of the manufacturer or distributor." R.C. 1345.71(E).

{¶15} A claim under Ohio's Lemon Law requires proof that:

(1) the plaintiff is the owner of a motor vehicle covered by an express warranty; (2) the motor vehicle does not conform to the applicable express warranty; (3) the plaintiff reported the nonconformity to the manufacturer, its agent, or its authorized dealer within one year following the original date of delivery or the first 18,000 miles of operation, whichever is earlier; and (4) the manufacturer, its agent, or its authorized dealer is unable to conform the vehicle to any applicable express warranty by repairing or correcting a defect that substantially impairs the use, value, or safety of the motor vehicle, after a reasonable number of repair attempts.

*Lester v. FCA US LLC*, 1st Dist. Hamilton Nos. C-210532 and C-210536, 2022-Ohio-

1776, ¶ 28, citing *Diguglielmo v. FCA US LLC,* 6th Dist. Lucas No. L-19-1187, 2020-Ohio-2858, ¶ 29, and *Iams,* 174 Ohio App.3d 537, 2007-Ohio-6709, 883 N.E.2d 466, at ¶ 13.

*No Issue of Material Fact of a Defect or Condition*

**{¶16}** To establish a cognizable nonconformity, consumers like Fagen must present " 'evidence from which a reasonable inference can be made that a specific problem with the vehicle is due to a defective part which is covered by the warranty.' " *Diguglielmo* at ¶ 41, quoting *Reddin v. Toyota Motor Distributors, Inc.*, 6th Dist. Wood No. WD-90-2, 1991 Ohio App. LEXIS 712, 5 (Feb. 22, 1991). A defect exists if a vehicle operates abnormally compared to the performance characteristics of a vehicle of the same make and model. *Kleinman v. Chrysler Motor Corp.,* 4th Dist. Scioto No. 94 CA 2234, 1995 Ohio App. LEXIS 2321, 14 (May 26, 1995).

**{¶17}** Issues concerning a vehicle's aesthetics, or the "fit and finish adjustments to parts such as moldings, windows, bumpers and headlights" are not a defect for purposes of establishing a nonconformity. *GMAC v. Hollanshead,* 105 Ohio App.3d 17, 23, 663 N.E.2d 663 (3d Dist.1995). While issues with a vehicle's cell-phone system are considered fit and finish issues, repeated problems with a vehicle's sensors or cruise-control system may constitute a defect. *See Ulrich v. Mercedes Benz USA, LLC,* 187 Ohio App.3d 154, 2010-Ohio-348, 931 N.E.2d 599, ¶ 15 (9th Dist.).

**{¶18}** Jaguar argues that Fagen failed to produce expert testimony or objective evidence of a defect. Instead, Jaguar claims that Fagen's evidence consists of nothing more than a self-serving affidavit. Without more, Jaguar argues, there is an issue of material fact as to whether a defect or condition exists.

{¶19} But "the general performance of a vehicle is within the common knowledge or experience possessed by lay persons." *Diguglielmo*, 6th Dist. Lucas No. L-19-1187, 2020-Ohio-2858, at ¶ 35 ("[A]ppellant and his wife do not need to be automobile experts to testify that the vehicle hesitates to accelerate in certain situations."). And Jaguar ignores several pieces of evidence in the record demonstrating that the indicator lights and vehicle software were operating outside the normal performance characteristics of a 2020 Jaguar F-type.

{¶20} In support of her summary-judgment motion, Fagen included videos of indicator lights flashing on her dashboard. The first video was taken at 340 miles, roughly 100 miles after the dealership's first attempted repair in September 2019. In that video, the dashboard cycled through several warnings indicating, "AEB not available," "BRAKE * * * Emergency Brake Assist not available," "stability control not available Drive with care," and "ABS * * * ABS fault." The second video, taken at 1634 miles, showed, as the vehicle was decelerating, "Stability control not available Drive with care," "Emergency Brake Assist not available," and "Forward alert not available" warnings. According to the owner's manual, an illuminated ABS warning means "there is a fault with the ABS" and the vehicle must be driven "with care, avoiding heavy brake pedal application." And when the BRAKE lamp illuminates while driving, a driver should "suspect worn brake pads or a fault with the braking system."

{¶21} In response to this evidence, Jaguar contends that the existence of a defect remains an issue of material fact, citing sections of the owner's manual that explain the ABS and BRAKE warning lamps "illuminate briefly, as a bulb check, when the ignition is switched on." But Fagen's second video captures the vehicle displaying a sequence of warnings as she decelerates from seven m.p.h. Still more, the dealership's foreman explained that these warnings do not occur when the vehicle's

8

communication network is functioning properly. Rather, these warnings were displayed due to communication errors caused by "[i]ncompatible software levels."

{¶22} Eventually, the dealership had to reinstall the vehicle's software. After that reinstallation, Jaguar's engineering department explained that the vehicle was finally "operating as designed."

{¶23} Jaguar cites to *Iams* and *Miller v. DaimlerChrysler Motors Corp.,* 8th Dist. Cuyahoga No. 78300, 2001 Ohio App. LEXIS 2450 (May 31, 2001), to argue that a defect must be a "verifiable mechanical problem." But Jaguar's reliance on *Iams* is misplaced, as there was no dispute in *Iams* that a malfunctioning rear gate latch constituted a defect. *See Iams,* 174 Ohio App.3d 537, 2007-Ohio-6709, 883 N.E.2d 466, at ¶ 46. And the *Miller* court held that "intermittent noise and vibrations alone, unaccompanied by any functional impairment, are not circumstantial evidence of a defect." *Miller* at 11. That is so because "[n]oise and vibration are not defects themselves." *Id.* But here, Jaguar's technicians linked the warning lamps to an underlying software issue. And again, " 'Ohio's Lemon Law statute does not require expert testimony to establish causation of a nonconformity.' " *Diguglielmo*, 6th Dist. Lucas No. L-19-1187, 2020-Ohio-2858, at ¶ 41, quoting *McGuire v. Am. Suzuki Motor Corp.*, 7th Dist. Columbiana No. 03 CO 40, 2004-Ohio-6799, ¶ 57.

{¶24} In sum, Fagen satisfied her burden to show that the vehicle was not operating as designed, due to a defect or condition with the vehicle's software. Therefore, we agree with the trial court that there is no issue of material fact regarding the existence of a defect or condition that fails to conform to the express warranty.

*The Vehicle Was Out of Service for More Than 30 Days*

{¶25} Next, Jaguar challenges the trial court's finding that the vehicle "was out of service approximately 77 days," which triggered the statutory presumption of recovery under R.C. 1345.73.

{¶26} Under Ohio's Lemon Law, a vehicle is presumptively a lemon after a reasonable number of repair attempts. R.C. 1345.73(A). This "is the 'enough is enough' portion" of Ohio's Lemon Law, as "it sets in well-defined terms the limit of frustration a consumer must endure." *Royster*, 92 Ohio St.3d at 330, 750 N.E.2d 531.

{¶27} The statute identifies four circumstances that trigger the presumption of reasonable repair attempts. Relevant here, the presumption is triggered if, within the first year of operation or the first 18,000 miles, the "vehicle is out of service by reason of repair for a cumulative total of thirty or more calendar days." R.C. 1345.73(A)(2). In these instances, "whether a vehicle ultimately gets repaired is irrelevant under the lemon law." *Ulrich, LLC*, 187 Ohio App.3d 154, 2010-Ohio-348, 931 N.E.2d 599, at ¶ 16, citing *Royster* at 330-31, citing R.C. 1345.73(A)(2). The Ohio Supreme Court has explained:

> [T]he statute speaks in terms of a cumulative thirty days out of service. Thus, the vehicle could have entered the shop on numerous occasions and been repaired each time. The unavailability of the new car is the key element. The fact that a consumer cannot drive a newly purchased vehicle for a full month in the first year of ownership defines the vehicle as a lemon. The General Assembly struck thirty days as the balance between what a consumer must endure and the time a manufacturer needs to make necessary repairs. Nothing beyond thirty days is statutorily reasonable. Once the boundaries of reasonableness have

been passed, the vehicle at that point becomes, legally, a lemon.

*Royster* at 331.

{¶28} Jaguar maintains that Fagen's evidence fails to trigger the statutory presumption of reasonable repairs. It acknowledges that the vehicle was repaired four times for a total of 27 days from September 2019 to February 2020. But Jaguar disputes the trial court's inclusion of the final repair in its calculation, when the vehicle was out of service from March 9 to April 22, 2020, for a total of 44 days. This repair time coincides with the onset of COVID-19, and Jaguar argues that the time must be tolled under R.C. 1345.73(B).

{¶29} Under R.C. 1345.73(B), the 30-day limit "shall be extended by any period of time during which the vehicle could not be reasonably repaired due to war, invasion, civil unrest, strike, fire, flood, or natural disaster." R.C. 1345.73(B)(1). We agree that the pandemic constitutes a natural disaster. And we recognize that Rooney, the service department foreman, was quarantined from March 15 to March 26, and the UK engineering department was off for a week.

{¶30} But we disagree that R.C. 1345.73(B)(1) tolls the entire 44-day repair time. Notably, the vehicle was out of service due to repair for 31 days as of March 13, days before Rooney began his quarantine. Jaguar has not explained why "the vehicle could not be reasonably repaired" because of COVID-19 before Rooney's quarantine. Therefore, the statutory presumption of reasonable repair was triggered before Rooney's quarantine.

{¶31} We find that that there is no issue of material fact as to whether Fagen's vehicle was serviced and unavailable for more than 30 days, thus entitling Fagen to R.C. 1345.73(B)(1)'s presumption.

11

*There is a Genuine Issue of Material Fact Regarding a Substantial Impairment*

**{¶32}** Finally, Jaguar argues that the trial court erred when it found that the defect substantially impaired the use, value, or safety of the vehicle to Fagen.

**{¶33}** Not all defects constitute a nonconformity under the statute. Rather, the defect or condition must "substantially impair the use, value, or safety of a motor vehicle to the consumer." R.C. 1345.71(E). That is, the statute requires "a major defect." *Royster,* 92 Ohio St.3d at 331, 750 N.E.2d 531. A mere bothersome condition is an insufficient basis for a cognizable nonconformity. *See Iams*, 174 Ohio App.3d 537, 2007-Ohio-6709, 883 N.E.2d 466, at ¶ 46.

**{¶34}** For a defect to substantially impair the use, safety, or value of a vehicle to the consumer, the consumer's personal belief is relevant, but that belief must be objectively reasonable. *See Ulrich*, 187 Ohio App.3d 154, 2010-Ohio-348, 931 N.E.2d 599, at ¶ 14; *see also Diguglielmo*, 6th Dist. Lucas No. L-19-1187, 2020-Ohio-2858, at ¶ 48; *Iams* at ¶ 24-44 (examining Ohio caselaw analyzing a substantial impairment). Accordingly, any examination of the facts must consider the consumer's viewpoint and circumstances. *See Iams* at ¶ 48 ("Jeep Wranglers are not purchased for their quiet, comfortable ride; rather, the Jeep Wrangler is bought for its rough and ready design"); *see also Ulrich* at ¶11-12 ("[A]s a consumer, he would be unwilling to purchase a used 'high-end' vehicle with such an extensive repair history.").

**{¶35}** Jaguar challenges Fagen's evidence of a substantial impairment. Jaguar argues that "a warning light problem" like Fagen's does not substantially impair a vehicle's use, value, or safety, relying on *LaBonte v. Ford Motor Co.*, 8th Dist. Cuyahoga No. 74855, 1999 Ohio App. LEXIS 4795 (Oct. 7, 1999). Like Fagen's, Louise LaBonte's vehicle repeatedly displayed a warning light. *Id.* at 2. But that is where the similarities end. Specifically, LaBonte's vehicle repeatedly illuminated the "check

engine" light, which implicated the vehicle's emission system. *Id.* at 3. An emissions warning differs from a brake-fault warning. A discerning driver would recognize the immediate danger of driving a vehicle with a malfunctioning braking system.

**{¶36}** More to the point, the evidence in *LaBonte* is distinguishable from Fagen's evidence. The *LaBonte* court found that LaBonte's "use of the vehicle was not 'substantially' impaired" based on evidence showing that LaBonte drove the vehicle "approximately 3,000 miles per month on average during the period of her ownership." *Id.* at 13. The court also found that a $200 reduction in the resale value, roughly five percent of the vehicle's overall value, was "not substantial in kind or degree." *Id.* Finally, LaBonte's asserted doubts about the vehicle's safety were contradicted by the evidence in the record. *Id.* Indeed, LaBonte testified at a deposition that "she never feared for her physical safety because of the warning light problem" and was advised that the issue "posed no threat to her or the drivability of the vehicle." *Id.*

**{¶37}** In support of her argument that the defect substantially impaired the use, value, and safety of the vehicle, Fagen explained in an affidavit that the "erratic and unpredictable nature of the problems" caused her to lose confidence in the vehicle and drive the vehicle much less than she otherwise would have driven. The lease allowed for 5,000 miles of driving each year, but an August 2020 repair invoice shows that she had driven the vehicle only 2,530 miles in the first year, about half of her allowance. She also asserted a $20,000 decrease in value.

**{¶38}** In total, the evidence in this case differs from the evidence in *LaBonte*. Considering Fagen's asserted shaken faith in the vehicle and the evidence of Fagen's diminished use, a reasonable person could find the defect or condition substantially impaired Fagen's use of the vehicle. And reasonable minds could find that being

repeatedly led to believe a vehicle's brakes will malfunction constitutes a substantial impairment to the safety of a vehicle.

{¶**39**} But reasonable minds could disagree about whether the dashboard warnings substantially impaired the use and safety of the vehicle. There was no evidence that the brakes actually malfunctioned or that Fagen faced any danger. And reasonable minds could disagree about whether the condition substantially impaired the value of the vehicle to Fagen.

{¶**40**} Therefore, we find that the trial court improperly granted summary judgment on whether the defect substantially impaired the use, safety, or value of Fagen's vehicle.

{¶**41**} We agree with the trial court and find no issue of material fact that 1.) the software issue and malfunctioning warning lights constituted a defect or condition, and 2.) that the vehicle was out of service by reason of repair for 30 days, establishing a presumption of reasonable repair attempts under R.C. 1345.73(A)(2). We affirm the trial court's summary judgment on these issues.

{¶**42**} But we disagree with the trial court and find a genuine issue of material fact as to whether the defect or condition substantially impaired the use, value, or safety of the vehicle. While the trial court correctly denied Jaguar's motion for summary judgment, it erred in granting in full Fagen's motion for summary judgment.

### *Fagen's Appeal is Moot*

{¶**43**} Fagen challenges the trial court's award of damages in a single assignment of error, raising issues involving the vehicle's "full purchase price" and whether the damages award should have reflected her total monthly lease payments. But because we reverse the trial court's decision to grant Fagen's motion for summary judgment as to a substantial impairment, Fagen's appeal is moot and we dismiss it.

14

*See* App.R. 12(A)(1)(c).

## III. <u>Conclusion</u>

{¶**44**} We sustain Jaguar's first assignment of error and reverse the trial court's grant of summary judgment on the issue of a substantial impairment. We overrule Jaguar's second assignment of error and dismiss Fagen's appeal numbered C-220640 as moot.

Judgment accordingly.

**CROUSE, P.J.,** and **ZAYAS, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.