[Cite as *Diguglielmo v. FCA US, L.L.C.*, 2020-Ohio-2858.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Peter Diguglielmo

    Appellant

v.

FCA US LLC, et al.

    Appellees

Court of Appeals No. L-19-1187

Trial Court No. CI0201801823

**DECISION AND JUDGMENT**

Decided:  May 8, 2020

* * * * *

Taylor R. Ward, for appellant.

Kevin W. Kita and Ashley C. Wakefield, for appellees.

* * * * *

**PIETRYKOWSKI, J.**

**{¶ 1}** Appellant, Peter Diguglielmo, appeals the decision of the Lucas County

Court of Common Pleas, awarding summary judgment to appellees, FCA US, LLC, and

Charlie's Toledo Inc., dba Grogan's Towne Jeep Dodge Ram, on appellant's claims for

breach of Ohio's Lemon Law and breach of warranty. For the reasons that follow, we reverse, in part, and affirm, in part.

## I. Facts and Procedural Background

{¶ 2} On May 10, 2016, appellant purchased a new 2016 Jeep Renegade from appellees. Appellant described that in February 2017, he began to notice "when I would come up to an intersection and be slowing up and then going to make that right hand turn I would make the turn and it felt like the vehicle was going to stall out, like for several seconds it felt like it just, it wouldn't do anything. My foot was on the gas but it wasn't going anywhere." Appellant said that he experiences this occurrence intermittently, about twice a week. He documented that it occurred 32 times between June and December 2017.

{¶ 3} On two of those occasions, appellant stated that he was almost involved in an accident because of the vehicle's failure to accelerate. Appellant testified in his deposition that on September 11, 2017,

A. I was pulling out of a McDonald's parking lot which is right next to the corner of Monroe and Talmadge and I was, again, coming up to, easing up to getting out and then I felt like I had plenty of time to pull out and turn into that right-hand lane. As I did that the car hesitated for several seconds and a big dump truck came right up on me blaring its horn, you know. And I felt like, you know, I tried to go and I felt like I couldn't and he kept blowing his horn. And I was scared, I thought there was going to

be some road rage issues and then finally I got going and got, you know, got away from the dump truck.

Q. Could you tell if the dump truck had to slam on its brakes or, other than it blowing its horn what made you feel as if you almost got rear ended?

A. It did have to slam on its brakes and slow way down.

Appellant testified that the second incident occurred on October 10, 2017. He explained,

A. I was on King Road turning right onto Central Avenue. Same thing, I was at a red light turning right on red. Same thing happened only this time it was with a, someone in a mini van and I almost got rear ended and the person in the mini van I felt like thought that I was intentionally going slow because he kept, he stayed right on my tail and kept honking his horn, wouldn't get off his horn. And then finally when I was able to accelerate I accelerated and got the heck out of there because again I was in fear that there was going to be some road rage issues.

{¶ 4} Appellant's wife, Denise, corroborated appellant's concerns about the vehicle. She testified in her deposition that,

A. That hesitation, pulling out when there are cars coming and not knowing, you know, if it was a thing that happened all the time you would probably learn how to get around it, but it doesn't happen all the time. So, it's jarring to me when it does which is why I don't drive it very much.

3.

Q. Let's talk a little bit more about this issue. So you stated that it happens when you're pulling out into traffic?

A. When you've stepped on the brake to stop say at a stop sign and then, so you've made your stop and then you step on the gas to go and you expect the car to accelerate, so, you know, you might be turning and there may be traffic coming, um, but the car doesn't quite go. It starts, seems like it starts to go and then it doesn't continue to go and feels like it's going to stall until it finally catches and goes again.

{¶ 5} On March 6, 2017, when the vehicle had 17,431 miles, appellant took the vehicle to Grogan's Towne for service, and reported that at times the vehicle fails to accelerate when coming to a near stop and then attempting to reaccelerate. The service worker could not verify appellant's complaint. The worker noted, "Using WITECH 2, found multiple stored codes for configuration, updated modules, cleared codes test drove vehicle for 8 miles, could not get vehicle to act up, can't duplicate concern at this time."

{¶ 6} Appellant returned to Grogan's Towne with the same concern again on June 12, 2017, when the vehicle had 23,801 miles. The service worker reported, "Checked for DTS codes. Found several not pertaining to concern. Cleared codes, road-test could not verify customer concern. Possible 9 speed transmission shifting characteristics."

4.

{¶ 7} On August 10, 2017, when the vehicle had 26,924 miles, appellant returned to Grogan's Towne for a third time regarding this issue. Once again, the service worker was unable to duplicate the issue on test drives.

{¶ 8} Finally, on January 22, 2018, when the vehicle had 35,120 miles, appellant again reported his concern. The service worker noted that he road-tested the vehicle three times with numerous starts, stops, and turns, but could not duplicate the concern.

{¶ 9} Two of the service workers testified in depositions. Both testified that they were unable to find anything wrong with appellant's vehicle. Notably, both also testified that they have not experienced any other customers coming in with complaints about a 2016 Jeep Renegade hesitating when it accelerates.

{¶ 10} Richard Hansen, the service manager at Grogan's Towne, testified that he spoke many times with appellant about the vehicle. He further stated that he test-drove the vehicle several times with appellant—separate from the times that appellant brought the vehicle to Grogan's Towne for service—and was never able to duplicate the concern. Hansen explained that the 9-speed transmission in appellant's vehicle was designed for fuel economy, and that "it does characteristically shift unusually at times." Hansen elaborated that the vehicle may delay for a "short, short period of time" as it shifts more. Hansen testified that he explained to appellant that this was a normal condition for the transmission. In January 2018, appellant completed a customer service survey and continued to express his displeasure with the shifting of the vehicle. Hansen responded,

5.

"I apologize that there is not a better fix for the shifting concerns on the 9 speed. As we have discussed they are very harsh shifting at times due to the design."

{¶ 11} On March 16, 2018, appellant initiated the present matter by filing a complaint against appellees asserting violations of Ohio's Lemon Law and breach of a written warranty.

{¶ 12} On January 11, 2019, appellees moved for summary judgment on appellant's claims. In their motion for summary judgment, appellees argued that appellant could not demonstrate that the vehicle suffered from a warranty non-conformity. In particular, they argued that appellant was unable to correlate his complaint of hesitation with any major defect. Appellees noted that the vehicle has never undergone any mechanical repairs related to the transmission, and no technician who inspected or test drove the vehicle could find that the transmission was operating in a way other than as designed. Alternatively, appellees argued that even if appellant could show a defect, the defect did not substantially impair the use, value, or safety of the vehicle because the vehicle has provided appellant with reliable transportation for over 50,000 miles.

{¶ 13} In his opposition to appellees' motion for summary judgment, appellant argued that his testimony, and that of his wife, that the vehicle would hesitate for several seconds and fail to accelerate was sufficient to provide a reasonable inference that the vehicle suffered from a warranty non-conformity, and thus a genuine issue of material fact existed. Moreover, appellant argued that because he testified that the defect

6.

substantially impaired his belief in the safety, use, and value of the vehicle, a genuine issue of material fact existed on this point as well.

{¶ 14} In their reply, appellees argued that appellant's "self-serving allegations" were insufficient to establish a genuine issue of material fact regarding the existence of a defect, absent some corroborating evidence or supporting expert testimony of a mechanical defect. Appellees noted that appellant's testimony is not competent because he "lacks any knowledge, skill, training, or experience." Appellees contrasted that with all of the mechanics and technicians who have examined the vehicle and found no defect.

{¶ 15} Attached to their reply was an affidavit from Jeffery Teifer, a Technical Advisor for FCA US, LLC. Teifer attested that he inspected the vehicle on January 15, 2019, and conducted a 26-mile road test. According to Teifer, during the test the vehicle responded properly to any driver input, and had full acceleration at all times. Teifer concluded, with a high degree of technical certainty, that the vehicle is mechanically sound and does not have any defects that would impair the use, value, or safety of the vehicle.

{¶ 16} Following the briefing on the motion for summary judgment, the trial court allowed the parties to conduct additional discovery.

{¶ 17} As part of the additional discovery, appellant deposed Teifer. Teifer testified regarding circumstances where there would be a delay between the driver's pressure on the gas pedal and the vehicle's response:

7.

Q.  If a driver puts a lot of pressure on the gas pedal, he floors it, the intention is for it to accelerate quicker?

A.  I believe that would be the driver's intention.  The vehicle is designed to accelerate at the best rate possible given the circumstances. Traction, engine, temperature, performance, transmission, position, all the things that come into play are evaluated instantly and if the response can be - if it can be instantaneous, then it's allowed.

If it's not in conditions like loose pavement where tire spin is detected, it's going to back off.  It won't give you that because it kind of makes it idiot proof in that respect.

Q.  So what conditions would you believe that the gas pedal pressure would not necessarily correlate with the response from the vehicle in terms of accelerating?

A.  In conditions where the wheel acceleration would be too fast to provide traction.

Q.  Is that based on external conditions?

A.  It's based on a lot of things.  Wheel speed is one of them, the actual traction, that's possible.  The torque that's available from the engine and the torque that's available to be dispersed through the transmission.

Q. Anything else?

A. There's a lot more but I don't think I could go into all that detail at this point.

Q. And when you're saying that those factors could affect whether or not the vehicle responds to the amount of pressure and the immediacy of that pressure, are you saying that problems in traction or problems in the torque could cause a delay?

A. Yeah, and delay we're talking anywhere from milliseconds to maybe a second, if that.

Q. So it would never be a delay of more than a second?

A. Unless you're in extreme conditions. So if you're on glaze ice, it would be quite a bit, but you'd get a lot of feedback from the vehicle. It would give you indications on the dash with the traction control and the stability control.

Q. Let's assume control of external factors where you're working with normal, dry, level, solid ground.

A. Okay.

Q. In those conditions, should there be any delay in a person's pressure on the gas pedal longer than a second?

A. I don't think so, no.

**{¶ 18}** Teifer was later asked, hypothetically:

> Q. * * * 2016 Jeep Renegade. Intermittent problems with acceleration once per day, sometimes once per week. Specifically acceleration hesitates between three to four seconds. It's not responding to the driver's pressure on the gas pedal. It has proper fuel, proper oil, proper level of traction. It's been verified by some sort of computer module. And there's no evidence of alteration or other damage to the vehicle causing that condition.
>
> If a 2016 Jeep Renegade experiences those conditions, would that be a defect covered by the manufacturer's express warranty?

He responded, "And again, once it's verified by a dealership that's inspected and found a defect then it is. If it's not, then it's all hypothetical at that point."

**{¶ 19}** In addition to conducting Teifer's deposition, appellant procured an expert report from Ben Hincher. Hincher reviewed the vehicle's repair records, spoke with appellant, and conducted a road-test while utilizing a "scan tool." Hincher concluded, to a reasonable degree of mechanical certainty, that the transmission output RPM does not match the throttle and engine RPM. Hincher stated that the driver would experience a delay in acceleration under those conditions.

**{¶ 20}** In Hincher's subsequent deposition conducted by appellees, he testified that during his four-mile test drive, he was unable to recreate appellant's complaint about the hesitation. However, he set up his scanning tool inside appellant's vehicle, and

10.

instructed appellant on how to operate it to record whenever appellant experienced an event. Appellant then drove the vehicle for approximately 45 minutes. It is from those scans taken by appellant that Hincher developed his opinion. Notably, while Hincher concluded that the driver would experience a delay in acceleration, Hincher was unable to tell from the scans how long the delay lasted. Further, when asked what specific component of the vehicle was defective, Hincher replied,

> I'm not 100 percent sure. I feel the engine is working well. The engine is running correctly. It appears to be in the driveline, presumably someplace in the automatic transmission, whether that torque converter, the valve body, the way he describes it, how the engine races but it's not transmitted to the wheels, it seems to be something in the transmission.

{¶ 21} Following the additional discovery, appellant filed a supplemental opposition to appellees' motion for summary judgment. In the filing, appellant argued that not only should appellees' motion for summary judgment be denied, but in fact he is entitled to summary judgment on his claims. Appellant contended that his testimony of a three to four second hesitation when accelerating, coupled with Teifer's acknowledgment that the delay should last no longer than one-second, and Hincher's diagnostic conclusion that a delay occurred, demonstrates that there is no genuine issue of material fact regarding whether a defect exists. Furthermore, he contended that there is no genuine dispute that a three to four second delay in acceleration constitutes a substantial impairment to the safety of the vehicle. Finally, he argued that appellees have had a

reasonable opportunity to repair the defect, have failed to do so, and have effectively quit trying. Therefore, appellant concluded that he was entitled to summary judgment on his claims.

{¶ 22} Appellees, in their response to appellant's supplemental opposition, argued that there is no evidence that the vehicle contains a defect. They noted that the vehicle has never generated a diagnostic trouble code or illuminated a warning light, which would be expected if the vehicle did in fact fail to accelerate for three or four seconds. Further, they contended that every mechanic that has inspected the vehicle has found it to be operating as designed. On this point, appellees discounted Hincher's testimony that the transmission output RPM does not match the throttle and engine RPM because he was unable to replicate the condition during his road-test, and instead had to rely on the scans taken by appellant. Consequently, Hincher was unable to determine how the vehicle was being driven at the time of the scans, and was unable to determine how long the alleged hesitation lasted. In addition, appellees attacked Hincher's testimony on the basis that he has never examined other 2016 Jeep Renegades, and thus has no way to determine whether appellant's vehicle is operating abnormally.

{¶ 23} Appellees also argued that appellant presented no evidence to demonstrate that the alleged defect substantially impaired the use, value, or safety of the vehicle, other than his own self-serving testimony. Appellees concluded that appellant's testimony was insufficient to demonstrate a genuine issue of material fact on this point, especially in light of the fact that appellant has continued to drive the vehicle, the vehicle has never

12.

broken down or failed to safely deliver appellant to or from his locations, and no one who has examined the vehicle has opined that the vehicle was unsafe. Therefore, appellees argued that summary judgment in their favor was appropriate.

{¶ 24} On August 6, 2019, the trial court entered its decision awarding summary judgment in favor of appellees. In its decision, the court found that appellant had failed to demonstrate a genuine issue of material fact that the vehicle suffered from a defect. In so finding, the court accepted that the vehicle's acceleration intermittently delays. However, the court found that there was insufficient evidence to support a reasonable inference that the vehicle was operating defectively, as opposed to as designed. On this point, the court found Hincher's testimony to be insufficient because although he determined that a driver would experience a delay in acceleration, he could not determine how long the delay would last, nor could Hincher specify what component of the vehicle was defective. As to Teifer's testimony, the court found that his testimony shows that a vehicle should not delay longer than one second. However, the court found that this was not helpful to appellant's case because Teifer never testified that appellant's vehicle delayed longer than one second. Therefore, the trial court concluded, "[a]s [appellant's] evidence fails to create a reasonable inference that the acceleration delay is a major defect, as opposed to an intended performance characteristic, he is left with nothing more than his own speculation."

13.

## II. Assignments of Error

{¶ 25} Appellant has timely appealed the August 6, 2019 judgment of the trial court, and now asserts four assignments of error for our review:

1. The trial court erred in finding, under the Ohio Lemon Law, Appellant did not present any facts from which a juror could reasonably infer the existence of a defect or a nonconformity.

2. The trial court erred by in effect requiring expert testimony on a Lemon Law claim in order for a Plaintiff to sustain a reasonable inference from which a jury may find a defect exists, and by weighing expert testimony which is a fact issue.

3. The trial court erred in failing to grant partial summary judgment in favor of the Plaintiff, Peter Diguglielmo.

4. The trial court erred in finding there was no issue of fact as to the existence of a defect under the Magnusson-Moss Warranty Act.

## III. Analysis

{¶ 26} We review the grant or denial of a motion for summary judgment de novo, applying the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 527 N.E.2d 198 (9th Dist.1989); *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Under Civ.R. 56(C), summary judgment is appropriate where (1) no genuine issue as to any material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one

14.

conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

### A. Trial Court's Award of Summary Judgment to Appellees on Appellant's Claim for Violation of Ohio's Lemon Law

{¶ 27} Appellant's first and second assignments of error pertain to the trial court's decision to award summary judgment to appellees on appellant's claim for violation of Ohio's Lemon Law, R.C. 1345.71, et seq. Thus, we will address those assignments of error together.

{¶ 28} R.C. 1345.72 provides,

(A) If a new motor vehicle does not conform to any applicable express warranty and the consumer reports the nonconformity to the manufacturer, its agent, or its authorized dealer during the period of one year following the date of original delivery or during the first eighteen thousand miles of operation, whichever is earlier, the manufacturer, its agent, or its authorized dealer shall make any repairs as are necessary to conform the vehicle to such express warranty, notwithstanding the fact that the repairs are made after the expiration of the appropriate time period.

(B) If the manufacturer, its agent, or its authorized dealer is unable to conform the motor vehicle to any applicable express warranty by repairing or correcting any nonconformity after a reasonable number of

15.

repair attempts, the manufacturer, at the consumer's option and subject to division (D) of this section, either shall replace the motor vehicle with a new motor vehicle acceptable to the consumer or shall accept return of the vehicle from the consumer and refund each of the following:

(1) The full purchase price;

(2) All incidental damages, including, but not limited to, any fees charged by the lender or lessor for making or canceling the loan or lease, and any expenses incurred by the consumer as a result of the nonconformity, such as charges for towing, vehicle rental, meals, and lodging.

Applicable here, "nonconformity" "means any defect or condition that substantially impairs the use, value, or safety of a motor vehicle to the consumer and does not conform to the express warranty of the manufacturer or distributor." R.C. 1345.71(E).

{¶ 29} In sum, to succeed on his claim, appellant must demonstrate:
(1) he was the owner of a vehicle covered by a written warranty, (2) the motor vehicle does not conform to the applicable expressed warranty, (3) he reported the nonconformity to the manufacturer or manufacturer's authorized dealer within one year following the original date of delivery or the first 18,000 miles of operation, whichever is earlier, and (4) the manufacturer or authorized dealer was unable to conform the motor vehicle to the express warranty by repairing or correcting a defect that substantially

> impaired the use, safety, or value of the motor vehicle, after a reasonable number of repair attempts.

*Iams v. DaimlerChrysler Corp.*, 174 Ohio App.3d 537, 2007-Ohio-6709, 883 N.E.2d 466, ¶ 13 (3d Dist.). We will address each requirement in turn.

### 1. Whether Appellant is the Owner of a Vehicle Covered by a Written Warranty

{¶ 30} As to the first requirement, it is undisputed that appellant is the owner of the 2016 Jeep Renegade. It is further undisputed that the vehicle is covered by a 3 year/36,000 mile written basic limited warranty that "covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship, or factory preparation." Therefore, no genuine issue of material fact exists, and appellant has satisfied the first requirement.

### 2. Whether the Motor Vehicle Conforms to the Applicable Expressed Warranty

{¶ 31} As to the second requirement, based on the arguments of the parties, we find that there are three issues that must be resolved: (1) what is the symptom that appellant is experiencing; (2) is that symptom the result of a defect or is it a function of the vehicle's design; and (3) if it is the result of a defect, does the defect substantially impair the use, value, or safety of the vehicle to the consumer.

### a. The Symptom

{¶ 32} This issue is perhaps the crux of this case. Appellant claims that the vehicle intermittently hesitates for three or four seconds before accelerating under certain conditions. To support his claim, appellant presented his own testimony and the

testimony of his wife as to their personal observations. In addition, appellant presented the expert testimony of Hincher, who, upon viewing scan reports captured by appellant, concluded that because the transmission output RPM does not match the throttle and engine RPM, a driver would experience a delay in acceleration.

{¶ 33} On the other hand, appellees point to the repair reports and the testimony of Hansen and Teifer, indicating that no one else was able to recreate the condition described by appellant. Further, appellees argue based on Teifer's and Hincher's testimony that if the vehicle were to hesitate for three to four seconds, a diagnostic trouble code would be generated in the vehicle. However, no one who examined the car found such codes.

{¶ 34} Upon our review of the record, we conclude that this is a classic instance of a genuine issue of material fact in that reasonable minds can view the evidence and either come to the conclusion that the vehicle delays for three to four seconds or that it does not delay for three to four seconds.

{¶ 35} Arguing against this result, appellees seek to discount the testimony of appellant and his wife because their testimony is self-serving, and because neither of them have any specialized training or knowledge regarding automobiles. However, appellant's testimony, and that of his wife, is not invalid for the sole reason that it was made by a party and sets forth facts in opposition to summary judgment. *See Tsirikos-Karapanos v. Ford Motor Co.*, 2017-Ohio-8487, 99 N.E.3d 1203, ¶ 10 (8th Dist.) ("An otherwise competent affidavit is not invalid for the sole reason that it is executed by a

18.

party and submitted to aver facts in opposition to summary judgment."). "To the contrary, a party's [testimony] is competent to create a genuine issue of material fact if made on personal knowledge." *Telecom Acquisition Corp. I, Inc. v. Lucic Ents., Inc.*, 2016-Ohio-1466, 62 N.E.3d 1034, ¶ 92 (8th Dist.), citing *Wolf v. Big Lots Stores, Inc.*, 10th Dist. Franklin No. 07AP-511, 2008-Ohio-1837, ¶ 12. Here, appellant and his wife have personal knowledge regarding the performance and behavior of the vehicle, thus their testimony is competent to create a genuine issue of material fact. Likewise, appellant and his wife do not need to be automobile experts to testify that the vehicle hesitates to accelerate in certain situations, as the general performance of a vehicle is within the common knowledge or experience possessed by lay persons.

{¶ 36} Finally, we find that appellees' arguments regarding appellant's testimony, as well as their arguments pertaining to Hincher's testimony—i.e., that Hincher had to rely on the scans from appellant and that he was unable to determine the length of any delay in acceleration—go to the weight to be given to the testimony. However, "[i]n summary judgment proceedings, a court may not weigh the evidence or judge the credibility of sworn statements, properly filed in support of or in opposition to a summary judgment motion." *Id.* at ¶ 93. "When trial courts choose between competing affidavits and testimony, they improperly determine credibility and weigh evidence contrary to summary judgment standards." *Id.*

{¶ 37} Therefore, we hold that a genuine issue of material fact exists on whether the delay in acceleration lasts for approximately three to four seconds.

19.

### b. Defect or Design

{¶ 38} Assuming, as we must for purposes of summary judgment, that the vehicle does in fact experience a three to four second delay in acceleration, we must then consider whether appellant has demonstrated that a genuine issue of material fact exists that the delay is caused by a defect.

{¶ 39} In this case, we find that a reasonable person could conclude that a three to four second delay in acceleration is due to a defective part. Aside from the knowledge common to every driver that a three to four second delay in acceleration is an exceedingly long amount of time, Teifer testified that any hesitation should last no longer than one second. In addition, the two service workers testified that they were unaware of any other customers complaining about the acceleration in a 2016 Jeep Renegade, which suggests that the problem is unique to appellant's vehicle.

{¶ 40} In opposition, appellees point to Henson's testimony that appellant was informed that the vehicle's transmission was designed for fuel economy and that appellant may experience unusual shift patterns. Furthermore, Teifer testified that the vehicle was operating as designed. However, both of those statements were premised on a short hesitation of less than one second. Thus, we find them insufficient to demonstrate that a genuine issue of material fact does not exist regarding whether a three to four second delay in acceleration is due to a defective part.

{¶ 41} Likewise, we find that Hincher's inability to specifically identify the defective part is insufficient to demonstrate that a genuine issue of material fact does not

20.

exist. "The consumer bears the burden of presenting evidence from which a reasonable inference can be made that a specific problem with the vehicle is due to a defective part which is covered by the warranty. Nothing in the statute imposes a higher burden on the consumer to eliminate all possible causes of the problem." *Reddin v. Toyota Motor Distributors, Inc.*, 6th Dist. Wood No. WD-90-002, 1991 WL 21522, *5 (Feb. 22, 1991); *see also McGuire v. American Suzuki Motor Corp.*, 7th Dist. Columbiana No. 03 CO 40, 2004-Ohio-6799, ¶ 57 ("Ohio's Lemon Law statute does not require expert testimony to establish causation of a nonconformity."). Here, a three to four second delay in acceleration leads to the reasonable inference that there is a problem with the transmission, which is consistent with Hincher's conclusion.

{¶ 42} Appellees contend that "a consumer's complaint about a symptom in their vehicle, without any evidence of a correlating mechanical defect or malfunction, is not sufficient circumstantial evidence to suggest that symptom is caused by a defect— especially in cases where dealership personnel could not verify any defect in the vehicle or found the vehicle was operating normally." We disagree, and find the cases relied upon by appellee for this proposition to be inapposite.

{¶ 43} Appellees cite *Miller v. DaimlerChrysler Motors Corp.*, 8th Dist. Cuyahoga No. 78300, 2001 WL 587496, *5 (May 31, 2001), which stated,

> [T]he fact that the vehicle makes an intermittent groaning or grinding noise
> while executing a turn and the steering column vibrates, without evidence
> of any functional impairment, did not, in itself, prove that the vehicle

contained a defect or malfunction.  Something more was needed to connect

that symptom to a defect in material, workmanship or factory preparation

covered by the warranty.

However, in that case, there was no evidence that the noise functionally impaired the

vehicle in any way.  Thus, the court concluded that intermittent noises and vibrations

alone are not circumstantial evidence of a defect that substantially impairs the use, value,

or safety of the vehicle.  *Id.* at \*4.  *See also Sharkus v. Daimler Chrysler Corp.*, 8th Dist.

Cuyahoga No. 79218, 2002-Ohio-5559, ¶ 20 (no evidence screeching noise was a result

of a defect in the steering system); *Stepp v. Chrysler Corp.*, 5th Dist. Knox No.

95CA000052, 1996 WL 752794 (Nov. 7, 1996) (following bench trial, evidence that

noise did not interfere with steering or operation of the vehicle, nor cause any wear or

tear on the steering assembly, was sufficient to support court's conclusion that the noise

was not a defect).  Here, in contrast, the alleged symptom of a delay in acceleration

functionally impairs the use of the vehicle, and thus is circumstantial evidence of a

defect.

{¶ 44} Furthermore, other cases cited by appellees in support of this proposition

are unhelpful in determining whether a genuine issue of material fact exists because they

derive from decisions following a trial, not summary judgment.  *See, e.g., Smith v.*

*Toyota, U.S.A.*, 4th Dist. Scioto No. 2139, 1994 WL 69881 (Feb. 24,1994) (decision that

issue with braking system was not a defect upheld based on evidence presented at a

bench trial); *Hill v. Toyota Motor Sales, U.S.A., Inc.*, 2d Dist. Montgomery No.

22.

CA 14465, 1995 WL 51051 (Feb. 10, 1995) (plaintiff failed to meet his burden of proof to prove by a preponderance of the evidence that a "lag" in the vehicle's transmission was the result of a defect).

{¶ 45} Therefore, we hold that, at the least, a genuine issue of material fact exists regarding whether a three to four second delay in acceleration is due to a defective part.

### c.  Substantial Impairment of the Use, Value, or Safety of the Vehicle to the Consumer

{¶ 46} The third, and final, issue to be resolved under this requirement is whether the defect substantially impairs the use, value, or safety of the vehicle to the consumer. The defect must be "major," "[Ohio's Lemon Law] does not create remedies for buyers who have soured on their new vehicle for cosmetic or other trivial reasons." *Royster v. Toyota Motor Sales, U.S.A., Inc.*, 92 Ohio St.3d 327, 331, 750 N.E.2d 531 (2001). Again, we find that conflicting evidence exists.

{¶ 47} On the one hand, appellant presented evidence that the delay in acceleration nearly caused an accident on two different occasions. Additionally, he offered his subjective belief that the delay in acceleration has substantially impaired the use and safety of the vehicle. On the other hand, appellees point to testimony that the vehicle has provided reliable transportation to appellant for tens of thousands of miles, and has never failed to transport appellant safely to and from his destinations.

23.

**{¶ 48}** Because we believe that reasonable people could come to different conclusions on whether the delay substantially impairs the use, value, or safety of the vehicle to the consumer, we hold that a genuine issue of material fact exists.

### d. Genuine Issue of Material Fact Regarding Whether the Vehicle Conforms to the Warranty

**{¶ 49}** Therefore, for the above reasons, we hold that a genuine issue of material fact exists regarding whether appellant's vehicle conforms to the written warranty.

### 3. Whether Appellant Presented the Vehicle to Appellees within One Year or 18,000 Miles

**{¶ 50}** As to the third requirement, we find that it is undisputed that appellant reported the alleged defect ten months after he purchased the vehicle, and at a time that the vehicle had 17,431 miles. Therefore, no genuine issue of material fact exists, and appellant has satisfied the third requirement.

### 4. Whether Appellees were Unable to Conform the Vehicle to the Warranty after a Reasonable Number of Repair Attempts

**{¶ 51}** As the fourth and final requirement, appellant must demonstrate that despite a reasonable number of repair attempts, appellees have been unable to remedy the defect. To aid in determining whether a reasonable number of repair attempts have been made, R.C. 1345.73(A) provides a presumption under certain circumstances:

> Except as provided in division (B) of this section, it shall be presumed that a reasonable number of attempts have been undertaken by the manufacturer, its dealer, or its authorized agent to conform a motor

24.

vehicle to any applicable express warranty if, during the period of one year following the date of original delivery or during the first eighteen thousand miles of operation, whichever is earlier, any of the following apply:

(1) Substantially the same nonconformity has been subject to repair three or more times and either continues to exist or recurs;

(2) The vehicle is out of service by reason of repair for a cumulative total of thirty or more calendar days;

(3) There have been eight or more attempts to repair any nonconformity;

(4) There has been at least one attempt to repair a nonconformity that results in a condition that is likely to cause death or serious bodily injury if the vehicle is driven, and the nonconformity either continues to exist or recurs.

{¶ 52} Here, the first three circumstances do not apply because appellant only presented the vehicle for repair one time during the first year and 18,000 miles, and there is no evidence that the vehicle was out of service for thirty or more calendar days. Thus, the only circumstance that could apply is if the condition is likely to cause death or serious bodily injury. As with our discussion of whether the defect substantially impaired the safety of the vehicle, we find that there is conflicting evidence on this issue.

{¶ 53} Certainly, a delay in acceleration of three to four seconds could cause an accident resulting in death or serious bodily injury. However, whether that is likely to

25.

occur is mitigated by evidence that appellant has driven the vehicle for tens of thousands of miles and has never actually been involved in an accident. Therefore, we hold that the issue of whether the condition is likely to cause death or serious bodily injury presents a question of fact that is not appropriate for resolution on summary judgment.

{¶ 54} Without a presumption to guide us, we find that a genuine issue of material fact exists regarding whether appellees have been unable to remedy the defect despite a reasonable number of repair attempts. Supporting the conclusion that a reasonable number of attempts have been made is the evidence that appellant presented the vehicle to appellees no fewer than four times, and the issue continues to occur. In addition, appellant points to Henson's response to the customer survey, which appellant interpreted as an acknowledgment that appellees were no longer going to attempt to fix the problem. In contrast, supporting the conclusion that a reasonable number of attempts have not been made is the fact that during all of the repair attempts, appellees were unable to replicate the concern. Further, it is undisputed that the vehicle never generated any trouble codes pertaining to the delay in acceleration. Thus, without confirming a problem, and with no diagnostic codes alerting appellees to an issue, appellees simply had nothing to fix.

{¶ 55} Therefore, we hold that reasonable minds could come to different conclusions, and a genuine issue of material fact exists regarding whether appellees have been unable to remedy the defect despite a reasonable number of repair attempts.

26.

### 5. Genuine Issues of Material Fact Preclude Summary Judgment

**{¶ 56}** Therefore, because genuine issues of material fact exist regarding whether the vehicle conforms to the applicable expressed warranty and whether appellees have been unable to make the vehicle conform to the warranty despite a reasonable number of repair attempts, we hold that the trial court erred in granting summary judgment to appellees on appellant's claim for violation of Ohio's Lemon Law.

**{¶ 57}** Accordingly, appellant's first and second assignments of error are well-taken.

### B.  Trial Court's Award of Summary Judgment to Appellees on Appellant's Claim for Breach of Warranty

**{¶ 58}** In his fourth assignment of error, appellant argues that the trial court erred in awarding summary judgment to appellees on his claim for breach of warranty under the Magnusson-Moss Warranty Act.  The Magnusson-Moss Warranty Act "establishes a federal right of action for consumers to enforce written or implied warranties against suppliers, warrantors, or service contractors." *Curl v. Volkswagen of Am., Inc.*, 114 Ohio St.3d 266, 2007-Ohio-3609, 871 N.E.2d 1141, ¶ 10.

> In order to state an actionable claim of breach of warranty and/or violation of the Magnusson-Moss Act, a plaintiff must demonstrate that (i) the item at issue was subject to a warranty; (ii) the item did not conform to the warranty; (iii) the seller was given reasonable opportunity to cure any

27.

defects; and (iv) the seller failed to cure the defects within a reasonable time or a reasonable number of attempts.

*Temple v. Fleetwood Ents., Inc.*, 133 Fed.Appx. 254, 268 (6th Cir.2005).

{¶ 59} As discussed above, we hold that a genuine issue of material fact exists whether the vehicle conforms to the warranty, and whether appellees were unable to cure any defects despite a reasonable number of attempted repairs. Therefore, we hold that the trial court erred in granting summary judgment to appellees on appellant's claim for breach of warranty under the Magnusson-Moss Act.

{¶ 60} Accordingly, appellant's fourth assignment of error is well-taken.

**C. Trial Court's Denial of Appellant's Partial Motion for Summary Judgment**

{¶ 61} Finally, in his third assignment of error, appellant argues that the trial court erred when it did not award him partial summary judgment on his Lemon Law claim. For the same reasons above, and when viewing the evidence in the light most favorable to appellees, we find that genuine issues of material fact exist regarding whether the vehicle failed to conform to the warranty, and whether appellees were unable to conform the vehicle to the warranty despite a reasonable number of repair attempts. Therefore, we hold that the trial court did not err when it denied appellant's motion for partial summary judgment on his Lemon Law claim.

{¶ 62} Accordingly, appellant's third assignment of error is not well-taken.

28.

## IV. Conclusion

{¶ 63} For the foregoing reasons, we find that substantial justice has not been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is reversed, in part, and affirmed, in part. The trial court's award of summary judgment to appellees is reversed. The trial court's denial of appellant's motion for partial summary judgment is affirmed. This matter is remanded to the trial court for further proceedings consistent with this decision. Appellees are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed, in part,
affirmed, in part, and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.        _____
                     JUDGE
Thomas J. Osowik, J.

                    _____
Christine E. Mayle, J.          JUDGE
CONCUR.

                    _____
                     JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.